THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* FREDERICK J. FULLER and Others, Defendants.

Court of General Sessions, New York County, August 14, 1935.

*William Copeland Dodge, District Attorney* (in person) [*Lawrence S. Lesser* and *Robert S. Rubin* of counsel], for the plaintiff.

*Nathan L. Miller,* for the defendant Frederick J. Fuller.

*Joseph M. Proskauer*, for the defendant Harry A. Kahler.

*Wilber W. Chambers*, for the defendant H. Pushae Williams.

COLLINS, J. On September 14, 1934, the grand jury of the county of New York returned two indictments against the defendants above named; one charging them with the violation of section 952 of the Penal Law (a felony), and the other with violations of section 421 of the Penal Law, and section 47 of the Insurance Law (both misdemeanors).

Thereafter, and on January 8, 1935, a superseding indictment was found and filed against these defendants charging them with violations of sections 952, 421 and 665 of the Penal Law (a misdemeanor), and section 47 of the Insurance Law. The superseding indictment merely consolidated so far as these defendants were concerned the charges contained in the indictment returned on September 14, 1934, adding an additional count under section 665 of the Penal Law.

The defendants were arraigned on the September fourteenth indictment on September 17, 1934 — pleaded " not guilty "— and were given leave to withdraw their pleas until September 27, 1934. No motion was made in the intervening time. They were arraigned on the superseding indictment on January 14, 1935 — pleaded " not guilty "— and were granted leave to withdraw such pleas and make any motion until February 5, 1935. No motion was made.

On April 22, 1935, the case appeared on the trial calendar of Part IX of this court for trial, and it was adjourned on motion of the district attorney until May 8, 1935. On April 23, 1935, a motion was made in the case of People v. John A. Dilliard, then on trial in this court, a case similar to the one at bar, to dismiss the indictment, in that case, on the ground that Victor House, the attorney who presented the evidence to the grand jury, upon which evidence the indictment was found, was not a person properly authorized to appear before the grand jury. The defendants through their attorneys urge that this was the first intimation they had of the facts on which this motion is based, namely, that the person who appeared before the grand jury and presented the evidence and who was the same person named in the Dilliard trial above referred to was not legally authorized to appear before the grand jury which presented the indictment in this case.

The motion is made on affidavits by the moving parties and replied to in behalf of the People, disclosing substantially the following facts:

In July of 1934 the grand jury of the county of New York initiated an investigation into the conduct and practices of title and mort-

gage guarantee companies, operating in New York county, which grand jury was formally continued until February, 1935. On August 20, 1934, the district attorney of the county of New York addressed a communication to Rufus E. McGahen, director of budget, city of New York, reading as follows: " Permission is respectfully requested to fill two new positions entitled ' Deputy Assistant District Attorney,' each at a salary of $100 per annum. This request is made in order to permit the appointees to appear before the Grand Jury in the Title & Mortgage investigation which is now pending before said body."

On the same date, namely, August 20, 1934, the director of the budget replied to the district attorney as follows:

" Certificate No. S–934.

" In accordance with your request dated August 20, 1934, and pursuant to authority granted by Resolution First, Paragraph Three of the Terms and Conditions of the Budget for 1934, permission is hereby given to employ two Special Assistant District Attorneys and Counsels at rates not exceeding $100 per annum, as occasion requires during the year 1934. Expenditures for this purpose shall be chargeable to Code 3104, Contingencies, Budget for 1934, and subject to audit by the Department of Finance."

A similar certificate, " S–40," was issued on February 5, 1935, continuing the permission thus granted for the year 1935. On August 21, 1934, following the receipt of the certificate dated August 20, 1934, the district attorney made, issued and executed an appointment as follows:

" STATE OF NEW YORK
CITY AND COUNTY OF NEW YORK } ss.:

" To all who shall see these presents;
" GREETING:

" Know Ye that I, William Copeland Dodge, District Attorney of the County of New York do, pursuant to the authority conferred by law, hereby depute, constitute and appoint

VICTOR HOUSE

special assistant District Attorney and Counsel, in and for the County of New York.

" Given under my hand at the office of the District Attorney in and for the County of New York this 21st day of August in the year one thousand, nine hundred and thirty-four.

" WILLIAM COPELAND DODGE
" *District Attorney.*

" Attest:
" JOHN A. BELL,
" *Chief Clerk.*"

On the same date, the said Victor House, who, it is conceded, is an attorney and counselor at law entitled to practice in the courts of this State, formally took an oath of office before OTTO A. ROSALSKY, a judge of the Court of General Sessions, to wit: " and that I will faithfully discharge the duties of office of Special Assistant District Attorney and Counsel in the office of the District Attorney in and for the County of New York according to the best of my ability."

A copy of the certificate of such appointment and of the oath of office were both duly filed in the office of the clerk of the county of New York on the same date.

Following his appointment and taking of the oath of office, Mr. House immediately entered upon the performance of his duties as special assistant district attorney and actually did appear before the grand jury and presented the evidence upon which the indictments in this case are found, and received payment for his services from the city of New York. Mr. House, in an affidavit filed in these proceedings, dated May 14, 1935, stated in part as follows:

" Since my appointment as Special Assistant District Attorney and Counsel on August 21, 1934, I have, for the performance of the duties of such office, attended at the office of the District Attorney of the County of New York virtually each and every working day, and during the major part of each such day. My efforts have been devoted largely, but not exclusively, to the investigation undertaken by the said District Attorney of the operations and collapse of so-called mortgage guarantee companies which heretofore operated in New York County. * * *

" Hundreds of witnesses have been examined privately in the course of the examination. The July, 1934, Grand Jury of New York County continued its sittings until February, 1935, in furtherance of the investigation, and returned eleven indictments against 28 officials of the said companies, all of which are defunct. In the foregoing indictments there are embraced eight Felony counts and a total of seventeen Misdemeanor counts.

" Virtually all the testimony submitted to this Grand Jury was submitted by myself. * * *

" On or about January 5, 1935, I submitted a bill to the City of New York for services rendered by me under my appointment as Special Assistant District Attorney and Counsel from August 21, 1934 to December 31, 1934, on a form supplied for that purpose by the Department of Finance of the City of New York. The said bill was certified and approved by the District Attorney, and on January 22nd, 1935, there was issued to me a check and warrant by the City of New York in the sum of $36.28. A photostatic

copy of this check and warrant is annexed hereto and marked Exhibit ' A.' * * *

" On or about March 7, 1935, I submitted a bill to the City of New York for services rendered by me under my appointment as Special Assistant District Attorney and Counsel from January 1st, 1935 to February 28th, 1935, on a form supplied for that purpose by the Department of Finance of the City of New York. The said bill was certified and approved by the District Attorney and on March 27th, 1935, there was issued to me a check and warrant by the City of New York in the sum of $16.66. A photostatic copy of this check and warrant is annexed hereto and marked Exhibit ' C.' "

On September 20, 1934, the district attorney addressed a communication to the board of estimate as follows:

" GENTLEMEN: Under date of August 20th, 1934 certificate No. S–934 was issued by Budget Director Rufus E. McGahen granting permission to employ two Special Assistant District Attorneys and Counsels at rates not exceeding $100 per annum, during the current year, the expense to be chargeable to our contingencies Appropriation, Code No. 3104.

" It is now respectively requested that your Honorable Board take the necessary action which will result in the establishment of the necessary line in order that the attaches appointed may be carried on our regular payroll."

This communication, was on September 28, 1934, referred to the director of the budget.

On October 5, 1934, the board of estimate and apportionment adopted a resolution authorizing the transfer of funds in the amount of $7,952.25 from debt service to the district attorney of New York county, Code No. 3104, contingency.

On October 10, 1934, the State Civil Service Department wrote to the district attorney approving the appointment of Mr. House.

Acting on the request of the district attorney dated September 20, 1934, which had been referred to him, the director of the budget reported under date of November 27, 1934, in part as follows:

" To the Board of Estimate and Apportionment:

" GENTLEMEN — On September 28, 1934, (Cal. No. 231), you referred to the Director of the Budget a communication, dated September 20, 1934, from the District Attorney, New York, requesting establishment on the regular roll of two positions of Special Assistant District Attorneys and Counsels at rates not exceeding $100 per annum for the current year.

" On August 20, 1934, the Director of the Budget issued a certificate in accordance with the terms and conditions of the 1934 budget, granting permission to the District Attorney to employ two Special Assistant District Attorneys and Counsels at rates not exceeding $100 per annum, as occasion requires during the year 1934. The expenditures for this purpose are to be charged to the contingency appropriation of this office, Code 3104, subject to audit by the Department of Finance.

" The above two attorneys were appointed in the regular manner for the purpose of conducting an investigation of various Title and Mortgage companies.  *  *  *

[The report here calls attention to the provisions of section 264 of the Code of Criminal Procedure.]

" The reason for the above request is that in the event of a motion to dismiss or an appeal, these indictments will not be dismissed on the technical grounds that the Special Assistants are not regular employees of the District Attorney's office for the reason that the positions are not provided for in the salaries regular employees schedule.  *  *  *

" Subsequent to this request an amount of $7,900 was appropriated to this office for the purpose of conducting this mortgage tax investigation. One of these Special Assistants is at present being paid from this fund. This request therefore involves only the establishment of one position.

" All payrolls and vouchers affecting personal service must be approved by the State Civil Service Commission before being presented to the Finance Department for payment. On October 10, 1934, the State Civil Service approved the appointment of Mr. Victor House as Special Assistant District Attorney and Counsel at $100 a year, effective August 21, 1934, for a period of one year.  *  *  *

" I am of the opinion that the Special Assistant as now provided for may properly be considered a regular employee, and there is consequently no necessity for the establishment of the position as requested.

" It is, therefore, recommended that the attached resolution recommending the necessary establishment of position be filed."

Attached to the foregoing report in the minutes of the board of estimate and apportionment and proceedings is the following: " The Secretary presented a communication, dated September 20, 1934, from the District Attorney, New York County herein, and the following report of the Director of the Budget, which was ordered filed." (Abstract from City Record, Friday, February 8, 1935, p. 968.)

The budget director, Rufus E. McGahen, in an affidavit filed in these proceedings, dated May 14, 1935, in explanation of his report to the board of estimate and apportionment above referred to, said in part as follows:

" I am and at all times since January 1, 1934, have been Director of the Budget of the City of New York, having been duly appointed to that position by the Mayor of said City. * * *

" The request of the District Attorney was apparently predicated on establishing in a personal service schedule a line, title and amount to which could be charged the salary covering the employment of Mr. House. In other words, the District Attorney requested a special appropriation. This procedure was considered unnecessary for the reason that the appointment of Mr. House was solely a question for the District Attorney and compensation for his service was properly chargeable to the Contingency appropriation already voted by the Board of Estimate and Apportionment to the use of the District Attorney, and in which account funds were available for the purpose of paying Mr. House's salary.

" Certificate No. S–934 was issued by me to insure the payment to Mr. House by the Comptroller of the City of New York of his salary. Without that certificate, the Comptroller would not have issued to him his salary warrants and checks. * * *

" My certificate merely meant and was intended by me merely to signify that the salary expenditure for Counsel was one of the purposes for which the ' Contingencies ' appropriation was made. The Finance Department concurred in my opinion and therefore issued salary checks to Mr. House."

It follows from the foregoing that Victor House performed the functions of, and acted as an assistant to, the district attorney, exercising the right of an official district attorney, by virtue of powers conferred in the manner as stated, under the impression that the necessary legal requirements were complied with, and the paramount question raised, under this motion is, were the legal requirements and authorization complied with, and was Mr. House duly qualified to represent the People and appear as counsel before the grand jury presenting the indictment of January 8, 1935 against these defendants.

Section 264 of the Code of Criminal Procedure provides, in part, as follows: " The district attorney of the county, an assistant district attorney, or in the county of New York, or in the county of Kings, or in the county of Bronx, an attorney regularly in the employ of the district attorney of the said counties, who shall be under salary paid by the said counties and who shall have filed in the office of the county clerk of the said counties the constitutional

oath of office, * * * must be allowed, at all times, to appear before the grand jury of any county at the request of the district attorney * * * for the purpose of giving information relative to any matter before them."

Section 313 of the Code of Criminal Procedure provides, in part, as follows:

" The indictment must be set aside by the court in which the defendant is arraigned, and upon his motion, in either of the following cases, but in no other: * * *.

" 2. When a person has been permitted to be present during the session of the grand jury, while the charge embraced in the indictment was under consideration, except as provided in sections two hundred and sixty-two, two hundred and sixty-three and two hundred and sixty-four."

Section 314 of the Code of Criminal Procedure provides as follows: " If the motion to set aside the indictment be not made, the defendant is precluded from afterward taking the objections mentioned in the last section."

Section 315 of the Code of Criminal Procedure provides as follows: " The motion to set aside an indictment must be heard at the time of the arraignment, unless, for good cause, the court postpone the hearing to another time."

The district attorney urges, that because this motion was not made at the time of arraignment, or within the time allowed for the withdrawal of the " Not Guilty " plea, for the purpose of motion, and for a period of four months thereafter, up to the time of the case appearing on the calendar for trial, which was allowed to elapse, this motion is not timely under the statutes, and should be dismissed on the ground of laches.

In my opinion, in view of all the circumstances, the defendants should be allowed their day in court, and the motion should be heard on its merits. The affidavits of the eminent counsel in this case establish beyond question there was no willful delay, and that the facts on which the motion is based were unknown to them until the motion was made to dismiss the indictments on April 23, 1935, at the trial of the People against Dilliard.

In the Dilliard case, my learned associate, Judge FRESCHI, in denying the motion, orally ruled and said:

" Motion No. 1 seeks an order dismissing the indictment on the ground that Victor House was not authorized to appear before the grand jury, was present during its deliberations and interrogated witnesses before that body, and acted in an advisory capacity, in violation of section 264 of the Code of Criminal Procedure."

" The claim is made by defendant's counsel that section 56 of

the Greater New York Charter has not been complied with; and it is conceded by the People that neither the Board of Estimate and Apportionment nor the Board of Aldermen passed any resolution with respect to the salary paid to Victor House, pursuant to the certificate issued by the Budget Director and the permission of the State Civil Service Commission. It has been held that this section of the Charter and its predecessors have no application to state officers in contradistinction to city and county officers. (*Whitmore* v. *Mayor*, 67 N. Y. 21; *Fellows* v. *Mayor*, 8 Hun, 484: *People ex rel. Allen* v. *Metz*, 61 Misc. 363; cf. *Buck* v. *City of New York*, 127 Misc. 354.) "

" The *Fellows* case holds that a District Attorney is a state office, and although it was decided by a divided court in this Judicial Department prior to the present State Constitution, I feel constrained to follow it. (For historical background of the office of prosecuting attorney, see *People* v. *Kramer*, 33 Misc. 209.)

" Authority was given to Mr. House to act for and on behalf of the District Attorney herein, which is established by the certificate of appointment in the papers and the oath of office, both on file. Hence, Mr. House was deputized specially to appear and act as an attorney on the professional staff of the District Attorney. Compensation for such services was fixed by proper authority of the city government, and he has been paid accordingly. He was in my opinion regularly employed within the purview of the statute.

" I cite the *Matter of McCusker* (23 Misc. 446). (See, also, *People ex rel. Scott* v. *Reid*, 135 App. Div. 89; *Fellows* v. *Mayor*, 8 Hun, 484.)

" If there be any irregularity in his appointment, at least it may be said he was a de facto officer. And his appearance before the grand jury does not vitiate the indictment. Nowhere does it appear that Mr. House was present during the deliberations of the Grand Jury or that he advised them at any time, or that he was in attendance while the grand jury voted upon the question of this indictment.

" This motion is denied."

This, of course, passed on the merits, as was necessary under the circumstances, unless the motion were to be denied because not made on original arraignments, or unless a juror were withdrawn, a mistrial declared, and the defendant permitted to proceed as in the instant case. On the merits of this contention, Judge FRESCHI, at the close of the trial, which was the first opportunity when such action could be taken, granted a certificate of reasonable doubt.

Shortly after this ruling and before the instant case could be reached for trial, counsel for these defendants had a conference

with Judge FRESCHI, and it was agreed that it would be the better practice to resort to this motion instead of waiting until the case was reached for trial in order to observe statutory requirements referred to in sections 313, 314, 315 of the Code of Criminal Procedure, quoted above, and avoid the complications that might otherwise arise as to timeliness in making the motion and the preservation of the rights of the defendants for insuring an unquestionable right to a determination on the merits, both in this court and, if necessary, on appeal.

Accordingly, this motion was made on May 2, 1935, returnable May 8, 1935. The defendants in this motion ask for leave to withdraw their pleas of " not guilty." This, if granted, would, of course, place them in the position of making the motion to set aside the indictment, on arraignment, in conformity with the statute. To permit the withdrawal of a plea of not guilty, in a proper case, rests in the sound discretion of the court. Under the decisions there seems to be no question that this is the law — in fact, it could well be regarded as abuse of discretion if arbitrarily denied. (*People* v. *Doyle,* 11 App. Div. 447; *People ex rel. Hubert* v. *Kaiser,* 150 id. 541, affd., 206 N. Y. 46; *People* v. *Strauss,* 165 App. Div. 58; *People* v. *Phifer,* 59 Misc. 339; *People* v. *Glen,* 173 N. Y. 395.)

In the *Phifer* case, based on a motion to inspect the minutes of a grand jury, the court said (p. 341): " CRAIN, J. In the *Glen* case a similar motion was made and entertained, not merely after the defendant had demurred to the indictment, but after the issue of law raised by the demurrer had been tried by the court. And Abbott, in his Trial Brief, Criminal Causes, pp. 24 and 25, says: ' A motion to quash or set aside an indictment upon a ground which would be fatal to a verdict may be made at any time; but when made after plea the court may properly require the plea to be withdrawn before entertaining the motion;' indicating that it is entirely a matter of discretion with the court as to whether or not such an order shall be made. Abbott, indeed, adds: ' It is in the discretion of the court to grant such leave at any time, with leave to renew the plea if the motion should be denied.' "

It is suggested that both the *Glen* and *Phifer* cases had to do with a constitutional right predicated on grounds not mentioned in section 313 of the Code, and that, therefore, a different rule should be applied as the code sections specifically related to an unauthorized appearance before the grand jury, and definitely fix the time for making of the motion, and hence mandatorily control as to time. I do not think this reasoning is sound. The decisions referred to, in my opinion, proceed on the theory that

even though the ground of the motion was not specifically mentioned by Code provision it may nevertheless be heard and passed upon in the same manner and to the same effect as if it were specifically provided by statute. In *People ex rel. Hubert* v. *Kaiser* (150 App. Div. 541), in passing on the question of the right to withdraw a plea of not guilty, although the Code provided specifically only for the withdrawal of a plea of guilty, the court said (p. 547) per MILLER, J.: " Express statutory authority for allowing the withdrawal of a plea of guilty does not deprive the court of the power to allow the withdrawal of the plea of not guilty, and it seems strange to hear a power challenged which has been exercised without question since the earliest times." In fact, it may be said that section 315 of the Code relied upon, in terms providing for the hearing of the motion at the time of arraignment, likewise contemplates circumstances necessitating a subsequent hearing, in the language " unless for good cause, the court postpone hearing to another time."

The cases relied upon by the district attorney, denying motions on the ground of laches (*People* v. *Strauss* and *People* v. *Doyle, supra*), uphold the discretionary power of the court in sustaining conclusion. In both cases the motions were made long after pleading. In the *Strauss* case nearly a year had elapsed and in the *Doyle* case the precise time was not disclosed but was evidently on the trial. Great stress is placed by the People in urging the argumentative force of the Massachusetts case of *Lebowitch* v. *Commonwealth* (235 Mass. 357; 126 N. E. 831 [1920]), relied upon particularly because the law on the subject in both States has developed in all respects along parallel lines, and the preservation of the traditional safeguards of the grand jury system have been enlarged upon in important decisions, the Supreme Court while considering the unauthorized appearance of a person before the grand jury a violation even of defendant's constitutional rights, nevertheless, held that even such rights must be deemed to have been waived unless timely objection be made. The court in an opinion of Chief Justice RUGG, said (p. 362): " Such an objection to an indictment as is here specified can be raised only before the general plea of guilty or not guilty. That was settled in *Commonwealth* v. *Tucker*, 189 Mass. 457, 463. * * * The matters set forth are essentially in abatement. They do not affect the jurisdiction of the court over the crime or over the defendant. Even constitutional rights must be seasonably asserted. A general plea to the indictment admits its genuineness. It is a waiver of matters in abatement."

Conceding that, regardless of whether or not unauthorized appearance before a grand jury is a violation of defendant's constitutional rights in this State, the law in both jurisdictions is identical, the conclusion of the *Lebowitch* case means only that the right to make the motion may be lost by actual laches, abandonment of the right amounting to a waiver, or delay destructive of the People's rights. The facts in the *Lebowitch* case, beyond all question, justified the conclusion of the court. This conclusion is irresistible, taking the recital of the facts in the exact language employed by the district attorney in his brief.

" In the *Lebowitch* case, the defendant was indicted and convicted of attempted larceny. After sentence he discovered that while the charge embraced in the indictment against him was under consideration, numerous persons (including police officers) were present. He thereupon sued out a writ of error and habeas corpus."

The defendant in the Massachusetts case failed to seek the exercise of any right of objection until after he had been sentenced. The case at bar presents an entirely different situation. The case had not been reached for trial, when the facts upon which the motion is based was discovered when counsel for defendants promptly proceeded as above indicated. The People, neither, have lost nor can lose any rights, and that is true even though the time fixed by the statute of limitations as to the misdemeanors has elapsed since the filing of the indictment for the reason that if the court were to grant a motion to quash or set aside the indictment on the grounds urged it would be his duty under the law to permit the resubmission of the case to another grand jury, in which event the provisions of section 144-a of the Code of Criminal Procedure, which suspend the running of the statute of limitations in the interim, would apply, " provided a new prosecution for the same offense be commenced within sixty days after the order is entered."

It must be appreciated that it has been the practice in this jurisdiction to permit defendants to move in Part I of this court for relief, necessitating action as on original arraignment, and to permit a hearing on the merits, where such proceeding is initiated in good faith, without vexatious delay, and where the people have lost no rights. Of course, it does not follow conclusively that the mere fact that practice has been developed or continued along a particular line makes it lawful, but it may, I think, be safely assumed that the practice here referred to has developed along the accepted lines of correct and lawful procedure, and safely rests in the sound discretion of the court.

The motion to withdraw the plea of not guilty is granted, and on the theory of the collective scope of the motion as made, its further

consideration proceeds on the understanding that the plea as stated has been withdrawn and the other elements are before me for consideration.

There is no necessity of an "inspection of the minutes" of the grand jury or for an order "directing the district attorney to furnish and make available to the court and to the defendants a copy of the minutes of the grand jury" for the reason that all the minutes would disclose for the purpose of this motion is the fact that Mr. House did appear before the grand jury and did present the evidence upon which the indictment was found, which fact is fully established by the affidavits in the case. An order for the inspection of the minutes is not a necessary condition precedent to a motion to dismiss, or rather, in better form, to quash or set aside the indictment, where the necessary facts on which the motion is based, are otherwise completely before the court. The motion for an "inspection," etc., is, therefore, denied, and the motion for an order to quash or set aside the indictment upon the ground that a person who was not authorized to appear before the grand jury while the charges embraced in the indictment were under consideration, contrary to the provisions of law in the premises, and for such other and further relief as may be just and proper is in due form and propriety before me on the merits in accordance with the provisions of sections 313, 314, and 315 of the Code of Criminal Procedure.

Beyond question, the formal appearance of counsel before the grand jury compels the court to set aside or quash the indictment on motion duly made. (*People* v. *Kramer*, 33 Misc. 209; *People* v. *Scannell*, 36 id. 40.)

In the *Scannell* case (1901), "one Samuel H. Ordway, an attorney at law, was permitted to be present during the sessions of the grand jury, while the charges embraced therein were under consideration, otherwise than as provided in * * * the Code of Criminal Procedure." The court held the indictment must be set aside, but granted leave to resubmit. The court said: "GILDERSLEEVE, J. The only persons who are permitted to be present during a session of the grand jury, when the charge is being considered, are (1) the court, (2) the district attorney, (3) the witnesses. I am unable to find anywhere in the statutes of this state, declaratory of the official rights and duties of the prosecuting officer of this county, any other than the single expression, ' District Attorney.' Strictly interpreted, this might be held to be but one man. In my opinion, however, it includes every duly appointed and qualified assistant district attorney, empowered to act for and represent the district attorney. * * *

" The appointment of assistant district attorneys is provided for by law, and they are clothed with the powers and duties of the District Attorney, when acting in his place and stead.

" It is not denied that Mr. Samuel H. Ordway was present and conducted the cases against these defendants before the grand jury, examined the witnesses, and advised the grand jury upon the questions which arose. Mr. Ordway was not the district attorney, he was not an assistant district attorney, he was not the court, he was not a witness. He was special counsel employed by the district attorney. It is not claimed that he was a public officer, and it is conceded that he took no official oath. We must, therefore, meet this question: Has the district attorney a right, in the absence of statutory authority, to delegate to a private attorney the power and duty which the law imposes upon him, by virtue of his office, in the prosecution of cases before the grand jury?

" The district attorney is not an ordinary legal attorney. He is ' a sworn minister of justice,' ' a *quasi* judicial officer,' representing the commonwealth. The powers and duties imposed by law upon public officials, that require the exercise of judgment and discretion in their performance, cannot be delegated, without express legislative authority. It was illegal for Mr. Ordway, as special counsel, to assume the powers and duties of the district attorney. As we have already seen, the appointment of assistant district attorneys is provided for by law, and, when duly appointed, they may act in the place and stead of the district attorney. In directing Mr. Ordway to attend before the grand jury, the district attorney undertook, without legislative sanction, to delegate to a private individual the most grave official duties imposed upon him as an officer. This conduct was not in accordance with the express provisions of the law. * * * It would be exceedingly dangerous to allow a general delegation of a prosecutor's powers to any member of the bar, or private individual, and thus permit private counsel to conduct inquiries before the grand jury.

" The statute is explicit and mandatory. It leaves no discretion with the court, but declares that, under circumstances like these, the indictments *must* be set aside. Mr. Ordway, as we have seen, was without official authority to represent the State as prosecuting officer before the grand jury. The sanction of the judge, presiding over the court in which the grand jury was serving, conferred no authority. No excuse for his attendance there can prevail over the law."

It is thus to be seen with what profound concern the courts consider the necessity for preserving the safeguards of the traditional grand jury, and its background in principle and theory. This

principle is very forcibly stated in a Massachusetts case. In *Matter of Opinion of Justices* ([Supreme Judicial Court of Massachusetts] 123 N. E. 100) the court, advising the Legislature that a bill permitting the presence of a police officer during the examination of witnesses before the grand jury would be unconstitutional, said:

" ' The law of the land ' implies an indictment or presentment by the grand jury in instances to which that proceeding is necessary. The grand jury is an ancient institution. It always has been venerated and highly prized in this country. It has been regarded as the shield of innocence against the plottings of private malice, as the defense of the weak against the oppression of political power, and as the guard of the liberties of the people against the encroachments of unfounded accusations from any source. These blessings accrue from the grand jury because its proceedings are secret and uninfluenced by the presence of those not officially and necessarily connected with it. It has been the practice for more than two hundred years for its investigations to be in private, except that the district attorney and his assistant are present. Secrecy is a vital requisite of grand jury procedure."

A careful reading of the decision in the *Scannell* case can leave little doubt, however, that had Mr. Ordway been officially vested with the attributes of an assistant district attorney, by an appointment purporting to name him officially to assist the district attorney and had taken a constitutional oath of office to perform duties as an assistant district attorney — " special," " deputy," or by any similar form of subordinate designation, the decision of the court would in all likelihood have been otherwise.

Prior to the decision in the *Scannell* case, the language in section 264 of the Code of Criminal Procedure, " or in the county of New York, or in the county of Kings, or in the county of Bronx, an attorney regularly in the employ of the district attorney of the said counties, who shall be under salary paid by the said counties and who shall have filed in the office of the county clerk of the said counties the constitutional oath of office," was not included in that section.

By chapter 615 of the Laws of 1907 that language was added. Evidently the purpose was to give to the district attorneys of those counties the right to employ counsel other than members of their regular previously existing staff, to meet emergencies arising in their offices and to avoid the force of the *Scannell* decision provided the district attorney regularly employed such counsel by official appointment and he was regularly paid a salary and took the constitutional oath of office and filed such oath in the office of the county clerk of the county. The whole idea seems to be that the

law contemplates and it is the legislative intention that any counsel appearing before the grand jury must be clothed with official authority and responsibility entitling him to exercise the rights of a duly constituted district attorney so far as appearances before the grand jury may be concerned.

It is contended by the defendants that the language of this amendment does not help the People in this case, however, for the reason that Mr. House was neither a district attorney, an assistant district attorney regularly appointed, nor was he regularly in the employ of the district attorney of the county of New York.

The contention of the defendants is based on the argument that section 1503 of the Consolidation Act (Laws of 1882, chap. 410, as amd. by Laws of 1924, chap. 662) provides for the appointment of twenty assistant district attorneys for the said county, and that this is binding and must be recognized as precluding any right on the part of the district attorney to appoint additional assistants, and this is urged notwithstanding the provisions of section 9 of the Public Officers Law, allowing appointments by a State officer, and defendants further claim that inasmuch as the provisions of section 2 of the Public Officers Law provide that the district attorney is only a " local officer " which section was adopted subsequent to previous decisions holding that the district attorney was a State officer, that this statute, therefore, is controlling, thus precluding the district attorney from assuming to act in matters of appointment as a State officer, and claim that by the provisions of law, the authorities of the city government must first authorize the appointment and officially pass upon the need of said appointment by formal resolution or act, as in the case of purely " local officers " and that only the city authorities have the right to establish a county position and fix the salary and that of assistant district attorney is within this description and the provisions of section 56 of the charter control and give the right to the city authorities to fix the salary of every person paid out of the treasury of the city and that even though it would be held that section does not apply to the district attorney's office, then that section 1583 of the charter controls, which requires the fixing of salaries of all county officers by the board of estimate and apportionment and the board of aldermen, which must be done before an appointment can be made.

It is urged that the district attorney by the various steps taken by him in appointing Mr. House did not act in compliance with these various statutes — that there was no appropriation for the office and that his appointment therefore, was null and void and of no avail and Mr. House, therefore, was absolutely without any official standing when he appeared before the grand jury. That

approval of his appointment by the State Civil Service Department is of no consequence and in no way affects the status of his appointment.

If the contention of the defendants, generally speaking, is correct, then the appointment of all of the district attorney's assistants other than those provided for by the Consolidation Act, have been without the authority of law except where they may have been warranted or authorized by the acts of the board of estimate and apportionment and the board of aldermen. Contention is made, too, by the defendants that the only effect of the amendment of 1907 to section 264 of the Code of Criminal Procedure, was to give legislative confirmation to the appointments made by the district attorney of the assistants in his office other than provided for in the Consolidation Act.

If the defendants are correct in their contention, the district attorney is severely handicapped in his appointive power and would be practically helpless in an emergency until the city authorities would formally sanction his appointments in all cases, and forbids him to exercise the functions of his office in this regard until the exercise of their discretion rather than his own, notwithstanding he is an officer whose election is provided for by article X, section 1, of the Constitution of the State of New York.

I have reached the conclusion that the contentions of the defendants are untenable — that the appointment of Mr. House was a substantial compliance with the law governing such appointments, and fully concur in the conclusion reached by my learned associate in the *Dilliard* case, quoted above in its entirety. Under the decisions, it seems to me that there is no doubt that the district attorney is a constitutional State officer. The importance of this case, and the subject-matter generally, warrants, it seems to me, a review of the cases relating to the status of the district attorney, and his functions and powers in connection with the exercise of the duties of his office, as a judicial or quasi-judicial officer.

In *Matter of Lewis* v. *Carter* (220 N. Y. 8) the court had occasion to pass on the general functions and powers of the district attorney and reviewed the background of the office and said (p. 13): " COLLIN, J. At common law, as administered in England or the American colonies, the office of attorney-general existed; that of district attorney did not. The attorney-general was, speaking broadly, the chief law officer of the sovereign, charged with the duties * * * of securing through the prosecution of persons accused of criminal offenses, the peace and safety of the people * * * The first attorney-general of the state was appointed by the Constitutional Convention of 1777, together with other officers deemed

necessary to establish the new state government. The first Constitution, that of 1777, did not make direct or express provision for the office. It provided for a Council of appointment by whom all officers other than those who, by the Constitution, were directed to be otherwise appointed, should be appointed. In 1796 the legislature passed an act entitled 'An act making provision for the more due and convenient conducting public prosecutions, at the courts of oyer and terminer and gaol delivery, and general sessions of the peace.' (Chapter 8.) The act divided the state, except the city and county of New York, into seven districts and enacted that for and in each district a resident proper person of the degree of counsel in the supreme court should be appointed to the office thereby created of assistant attorney-general with the duty to attend criminal courts of the district, 'manage and conduct all suits and prosecutions for crimes and offenses cognizable in the said courts,' and as to the districts the duty of the attorney-general in such respects, except as especially imposed, should cease.

"In 1801, chapter 146 of the laws of that year was adopted. It created the office of district attorney in each of the seven districts, attaching to the office the duties of the office of assistant attorney-general. It continued the duty of the attorney-general 'to conduct all public prosecutions, at the courts of oyer and terminer and gaol delivery in the city and county of New York.' It contained the provision: 'Provided, nevertheless, that it shall be lawful for the person administering the government of this State, or any judge of the supreme court by writing under his hand to require the attorney general to attend the court of oyer and terminer and gaol delivery to be held in any county, and it shall be the duty of the attorney general to attend accordingly, and thereupon to conduct at such court all public prosecutions; and the district attorney for such district shall in such matters as appertain to his office, and shall be required of him by the attorney general, aid in conducting the same * * *.' A similar proviso was in the act of 1796, the assistant attorney-general being therein charged as was the district attorney in the act of 1801. (2 Lincoln's Const. Hist. of New York, pp. 526–531; *People* v. *Miner*, 2 Lans. 396.) In 1818 a statute was passed repealing the act of 1801 and providing for the appointment of a district attorney in each county, charged with the duties imposed by the act of 1796 upon the assistant attorney-general and by the act of 1801 upon the district attorneys. (Laws of 1818, chapter 283.) The Revised Statutes of 1828 provided a district attorney in each county 'to attend the courts of oyer and terminer and jail delivery, and general sessions, to be held from time to time, in the county for which he shall have been

appointed; and to conduct all prosecutions for crimes and offenses cognizable in such courts.' The language has been transmuted into the following: ' It shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed; * * *.' (County Law [Cons. Laws, chap. 11], section 200, subd. 4.) * * * All the means provided by the law to bring convictions, sentence and the adjudged punishment to a criminal offender constitute the prosecution for the crime committed by him."

In *People* v. *Kramer* ([1900] 33 Misc. 209), where the right of a Deputy Attorney-General to appear before a New York county grand jury in an election case (although jurisdiction was conferred on the Attorney-General by statute) was challenged, the court said (p. 212): " GOFF, J. The first time that the district attorney was mentioned in the Constitution was in 1846, when it provided that he, with other county officers, should be chosen by the electors of the respective counties. That provision is re-enacted in section 1, article X of the Constitution of 1894. The Constitution simply provides for his election, and does not define his duties or his powers. These have been the subjects of legislative enactments. The Legislature has given to the district attorney the power to appear before the grand jury, and it has also given to the Attorney-General the same right. * * *

" It is pertinent to inquire into the origin of the office of the district attorney and see what his rights and duties were at the time of the adoption of the Constitution in 1846, and also into the origin of the Attorney-General and his rights and duties. It is unnecessary, with regard to the Attorney-General, to go back further than the organization of the state government in 1777. The office was then in existence as the Attorney-General of the colony, and was clothed with certain rights and powers derived from the common law. In *People* v. *Miner*, 2 Lans. 397, the court, by MULLEN, J., said: ' The attorney-general had the power, and it was his duty, among other things, to prosecute all actions, necessary for the protection and defense of the property and revenues of the crown, and, by information, to bring certain classes of persons accused of crimes and misdemeanors to trial.' The common law of England was the law of our colonial government. The Attorney-General, under the colonial government, received his appointment from the Governor of the colony, and exercised his duties under the common law. Later on, he was commissioned by the crown. The Attorney-General, at common law, was the chief legal representative of the sovereign in the courts, and it was his duty to appear for and

prosecute in behalf of the crown any matters, criminal as well as civil. It was said by Blackstone (3 Black. Com. 27): ' He represents the sovereign, in whose name all criminal process issue, and his power to prosecute all criminal offenses is unquestioned at common law.' In *People* v. *Miner, supra*, it was said: 'As the powers of the attorney-general were not conferred by statute, a grant by statute of the same or other powers, would not operate to deprive him of those belonging to the office at common law, unless the statute, either expressly or by reasonable intendment, forbade the exercise of powers not thus expressly conferred. He must be held, therefore, to have all the ·powers belonging. to the office at common law, and such additional powers as the legislature has seen fit to confer upon him.' This was cited with approval in *People* v. *Tweed*, 13 Abb. Pr. (N. S.) 25. The office of Attorney-General, though an existing office, was not mentioned in the Constitution of 1777, but his appointment as an existing officer was provided for by the council of appointment."

Then follows a recital by the court of the further progress as indicated in *Matter of Lewis (supra)*, Goff, J., continuing, said (p. 215): " Chapter 66 of the Laws of 1813 made it the duty of the district attorney to attend the Courts of Oyer and Terminer and jail delivery in New York County, and to manage and conduct all suits and prosecutions therein in the same manner as in other counties, and that ' it shall not be necessary for the attorney-general to attend such courts except when required so to do by the governor or one of the judges of the supreme court.'

" This act simply declared it unnecessary for the Attorney-General to attend the courts in New York County, unless directed, etc. But in no way, either by express terms or reasonable implication, was he precluded from attending if he so wished, nor was the relation of the district attorney to him as an assistant in any way altered."

The judge, continuing, said (p. 219): " The district attorney, by statute and by a long-continued practice, has succeeded to some of the powers of the Attorney-General within the respective counties. but he has not supplanted him.

" In *People* v. *McLeod*, 1 Hill, 377, it was said: 'At common law, the attorney-general alone possessed this power, to enter a *nolle prosequi*, and might, under such precautions as he felt it his duty to adopt, discontinue a criminal prosecution in that form at any time before verdict. * * * It probably exists unimpaired in the attorney-general to this day; and it has been by several statutes delegated to district attorneys, who now represent the attorney-general in nearly everything pertaining to indictments, and other criminal proceedings, local to their respective counties.' * * *."

And (on p. 220): "It is a matter of common knowledge that, in the great majority of indictments found in this county, it is an assistant district attorney who appears. The appointment of an assistant district attorney is provided for by law, and he is clothed with the powers and duties of the district attorney when acting in his place and stead."

In the case of *Fellows* v. *Mayor* ([1876] 8 Hun, 484), which was based on an action brought by John R. Fellows, an assistant district attorney, to recover the full amount of his salary after a sum fixed by the district attorney had been reduced by the board of aldermen, the court which held that the board had not the legal right so to reduce, said by BRADY, J. (p. 485): "The question presented in this case is, whether the plaintiff was or was not a State officer while holding the position as assistant district attorney. It is conceded that the district attorney is a State officer. It could not well be questioned. (Rev. Stat., vol. 1, p. 96; [Edm., vol. 1, p. 98, Sec. 15.]) The plaintiff was appointed by that officer under the provisions of the Revised Statutes authorizing the appointment of all assistants, etc., by the body, board or officer by which or to whom they shall be respectively subordinate, in all cases in which the appointment is not specially provided for. (1 Rev. Stat. 116, sec. 5.)" A statute similar to the present section 9 of the Public Officers Law.

Judge BRADY, continuing, said: "The salary of the district attorney is fixed by the supervisors and paid by the county. * * * In 1868 * * * the legislature recognized the assistant district attorneys in the act making provision for the government of the county of New York."

The court then referred to a statute defining the duties of assistant district attorneys in other counties, and continuing, said (on p. 485): "The powers thus conferred upon the officers named are those which are exercised by the assistants in this county, and their services, in consequence of our large population, and the numbers of criminals who come within the borders of our city, from places too numerous to mention, are not only valuable but indispensable. They are connected with and make a part of the department of an officer of the State, connected with its judicial system, and performing many of his duties, with the same effect as if he discharged them personally. They are his assistants, and not officers of the city or county.

"It is true that the salary given them is paid by the county, but this does not convert them into county officers, any more than the payment of the salary of the district attorney makes him such

an officer. They are, it may be said, no less district attorneys because called assistants. They help to discharge the duties of the office, to administer the criminal laws. (See *People ex rel. Buckley* v. *Benton,* 29 N. Y. 534.) When provision is made for the government of the county of New York, the salary of these officers being a part of it, in virtue of their office, and the relation it bears to the department to which they belong, is *ex necessitate* included. They were not, therefore, within the provisions of chapter 583 of the Laws of 1871, authorizing (Sec. 3) the board of apportionment to regulate all salaries of officers and employes of the city and county governments." A statute similar to section 56 of the charter, above referred to.

The court in the same decision said, by DAVIS, P. J., concurring (on p. 487): "*First.* It is very clear that, by ' Statute, the district attorney of the city and county of New York is not an officer of the county government, but a State officer ' and the fact that his compensation is payable out of the treasury of the county makes no difference with his legal status in that respect. The respondent was an assistant district attorney. The functions and duties of his office were the same as those of the district attorney. He was not appointed nor was he removable by any officer or board of the county government, but, in the absence of any statute directing the mode of his appointment or removal, the district attorney was clothed, by a general provision, with full power over that subject. * * * The board of apportionment, by the third section of the act entitled 'An act to make provision for the local government of the city and county of New York,' passed April 19, 1871 (Chap. 583 of the Laws of 1871), were empowered to regulate all salaries of officers and employes of the city and county of New York, and that board, by resolution passed May 15, 1871, resolved that such salaries be reduced at the rate of twenty per cent per annum, to take effect on the first day of June, 1871. The power given by the act only applied to the salaries of officers and employes of the city and county governments. The board had, therefore, no authority over officers of the State government, whether their duties were local to the county or their salaries paid out of the county treasury or not. Whether an office is one of the county, or of the State government is purely a question depending upon its classification by law. I think it is manifest, under the statute above referred to, that the district attorney himself is an officer of the State government. He is classified among the judicial officers of the State, and no reason exists for holding that his assistants, who possess the same functions and perform the same duties, should not be classified, by operation of the same statute, in the same manner.

They do not belong to nor form any part of the county government, but take rank as officers of the State government for the purpose of enforcing the laws of the State within their territorial jurisdiction. The mode in which their salaries are to be paid, and the location in which their duties are to be performed, are mere incidents neither defining nor affecting their legal status as public officers. Hence the fact that the statute gave the board of apportionment power to regulate the salaries of officers and employes of the city and county of New York, did not affect the respondent, because he was neither an officer nor an employe of the city or county government."

On the line of reasoning that the district attorney is a constitutional State officer and not subject to regulations by the city government as to his power of appointment and fixing of salaries, and that section 56 of the charter of the city of New York does not apply, see, also, *Whitmore* v. *Mayor* (67 N. Y. 21); *People ex rel. Gardinier* v. *Supervisors* (134 id. 1); *People ex rel. Crane* v. *Taylor* (17 Misc. 505); *People ex rel. Allen* v. *Metz* (61 id. 363); *People ex rel. Eldred* v. *Palmer* (154 N. Y. 133).

It would seem as if clinching the argument that the district attorney is a State officer and completely disposing of the questions raised in defendants' brief to the effect that section 2 of the Public Officers Law changed the status of the district attorney from the condition that prevailed under the law at the time that some of the decisions above cited were rendered; that the recent case of *Spielman Motor Sales Co., Inc.,* v. *Dodge* (295 U. S. 89; 55 Sup. Ct. Rep. 678), in a decision handed down by the United States Supreme Court this year, April 29, 1935, conclusively settles the subject.

The court held that the district attorney in each county in the State of New York, although classified by State statute as a local officer because chosen by electors of only part of the State, is part of the State's judicial system performing distinctively a State function within his county. Chief Justice HUGHES delivered the opinion and said (p. 679): " The office of District Attorney in the State of New York was created in 1801. In each of the districts as then established, which included several counties, he was charged with duties which previously had devolved upon an Assistant Attorney General. In 1815 the county of New York was made a separate district, and in 1818 provision was made for the appointment of a district attorney in each county. The power of appointment was vested in the governor and the council of appointment until the Constitution of 1821, when that power was given to the county courts. The Constitution of 1846 provided that district attorneys should be chosen by the electors of the respective counties.

" Despite this provision for local elections, the district attorney in each county has been regarded as a state officer performing a state function and taking the place, in respect to his duties within the district or county, of the Attorney General, upon whom at the outset these duties had been laid. Lincoln's Constitutional History of New York, vol. 2, pp. 529, 530; vol. 4, pp. 722, 723. Under the state statutes prior to 1892, it appears that district attorneys were classified as judicial officers. N. Y. 2 Rev. Stat. pt. 1, c. 5, tit. 1. In *Fellows* v. *Mayor, etc., of New York* (1876) 8 Hun (N. Y.) 484, 485, dealing with the status of an assistant district attorney, the court said: ' It is conceded that the district attorney is a State officer. It could not well be questioned.' And in *People ex rel. Lyon* v. *Nicoll* (Sup. 1891), 32 N. Y. S. 279, 280, the court referred to the office of the district attorney as ' a state office, classified by the Revised Statutes as a judicial office.'

" In the Public Officers Law of 1892, c. 681 (now Laws 1909, c. 51, chapter 47 of the Consolidated Laws of New York, article 1, § 2) a different classification was made and public officials were defined as either ' state officers ' or ' local officers,' the latter embracing officers chosen ' by the electors of a portion only of the state.' District attorneys fall within this description of local officers. Notwithstanding the change in classification, they are still to be deemed a part of the judicial system of the state, each performing within his county a distinctively state function. Lincoln's Constitutional History of New York, loc. cit. See Opinions, Attorney-General of New York, 1924, p. 120."

It is quite true that section 1503 of the Consolidation Act (Laws of 1882, chap. 410, as amd. by Laws of 1924, chap. 662) provides that there shall be twenty assistant district attorneys in the county of New York, and that their salaries are fixed by the same enactment, but it could not be said, as contended by the defendants that this is binding upon the district attorney and precludes any right on his part to appoint additional assistants, notwithstanding the provisions of section 9 of the Public Officers Law.

Section 9 of the Public Officers Law provides in part, as follows: " Every deputy, assistant, or other subordinate officer, whose appointment or election is not otherwise provided for, shall be appointed by his principal officer, board or other body, and the number thereof, if not otherwise prescribed by law, shall be limited in the discretion of the appointing power." While it is true that a number of assistants were required to be appointed as provided by the Consolidation Act, the total that may be appointed under necessary circumstances was not limited by the provisions of the act. Certain it is that a very large number were appointed beyond

twenty. The district attorney of New York county has at present a staff of seventy lawyers, twenty-three assistants and forty-seven deputies, to say nothing of the new assistants recently appointed for the special purpose of the duties necessary to be performed in the investigation incident to the extraordinary term of the Supreme Court recently ordered by the Governor of the State. Whether they are styled or titled " deputy assistant attorney " or " special assistant district attorney," seems to me to make no difference. It seems to me that the argument of the district attorney that " all the word ' Special ' prefixed to Mr. House's title means is that he is not one of those assistants provided for in section 1503 of the New York City Consolidation Act," is correct.

In *People ex rel. Osborne* v. *Board of Supervisors* (168 App. Div. 765) the court said (p. 766): " The Attorney-General may appoint two deputies at salaries fixed, and, ' such other deputies as he may deem necessary and fix their compensation.' It does not impair the validity of the appointment that the officer is termed a ' special deputy attorney general.' That means merely that he is a deputy specialized for the purpose named."

In *People ex rel. Flood* v. *Gardiner* (157 N. Y. 520) the court said (p. 522) per PARKER, Ch. J.: " The district attorney of the city and county of New York has a number of assistants who occupy positions created by statute, and whose salaries are fixed by law, but in addition to that he is obliged to avail himself of extra help, such as clerks and stenographers, and so-called subpœna servers, and others who serve in various capacities. The creation of such offices and the designation of incumbents to fill them have always been entirely discretionary with the district attorney, and have not been made subject to the state civil service rules nor to the rules and regulations of any of the departments of the government of the city and county of New York, and the same is true as to that particular office in all of the other counties of the state. The expense of conducting the district attorney's office in the city and county of New York is made a county charge, but as a matter of convenience, and in anticipation of county charges payable by the municipality, appropriations are annually made by the board of estimate and apportionment to meet all necessary expenses. Regardless of such appropriations, however, the district attorney has always been, and still is, required to make appointments and avail himself of the services of individuals, whose expenses are to be met by the county, the question of the capacity of the persons to be employed and the compensation to be paid resting in his discretion."

By the very provisions of section 264 of the Code of Criminal Procedure, that were added by the Laws of 1907 (as amd. by Laws of 1929, chap. 343) as above stated " or in the county of New York * * * an attorney regularly in the employ of the district attorney of the said counties, who shall be under salary paid by the said counties and who shall have filed in the office of the county clerk of the said counties the constitutional oath of office," the Legislature recognized the right of the district attorney to appoint an attorney, and this regardless of the title that he might apply to such attorney, and clearly intended by enactment to permit such attorney to appear before the grand jury. What did the amendment mean? An attorney in the employ of whom? of the city of New York?— of the county of New York? The language as stated cannot be misunderstood — *an attorney regularly in the employ of the district attorney.*

In the case at bar the district attorney, with all of the formality that regularity could command, appointed Mr. House by formal written appointment issued over the signature and seal of the district attorney. Mr. House took the oath of office before a judge of the Court of General Sessions with all the formality and regularity that oaths of office are taken by public officers. Mr. House filed that oath of office with the county clerk of the county of New York and Mr. House has since received a salary from the city of New York duly audited and paid by the city, which had been fixed by the district attorney. This is, certainly, so far as the language of the Code is concerned, a complete compliance with the provisions of section 264 thereof, in so far as the district attorney himself and the city authorities could perfect such compliance.

I must hold, therefore, that Mr. House is and was at the time that he appeared before the grand jury and presented the evidence in the instant case, an attorney regularly in the employ of the district attorney of the county of New York, and that he took the constitutional oath of office as required by law and duly filed such oath of office in the office of the county clerk of the county of New York, and was, therefore, qualified to appear before the grand jury as an assistant to the district attorney and was clothed for such purpose with the right of the district attorney of the county.

In *Matter of McCusker* (23 Misc. 446), CLEARWATER, J., said (p. 450): " Regularly, in common English, means: Constituted, appointed, or conducted in the proper manner; conformable to law or custom; duly authorized."

In *People ex rel. Crane* v. *Taylor* (17 Misc. 505) the court said: SMITH, J. (p. 509): " The district attorney is charged with grave responsibility and duties of the highest moment to the county.

His assistants, for whom he is responsible, occupy the most confidential relations to him, and necessarily are charged with duties of the utmost importance. I think the public welfare demands that the district attorney in the selection of his assistants should be left absolutely free in the exercise of his own judgment and discretion."

It cannot be contended, however, that in the exercise of his discretion, the district attorney can be arbitrary. The exercise of that discretion must be reasonable. I believe the law to be well settled that section 56 of the charter of the city of New York, which provides that the salaries of officers of the city government are to be fixed by the board of aldermen, is not applicable to appointments made by the district attorney as appears in the cases above cited. There is no doubt, however, in my opinion, that sections 1542 and 1583 of the charter do apply to the district attorney. Section 1542 provides in part: " It shall be the duty of the heads of all departments and of all officers of said city, and of all boards and officers charged with the duty of expending or incurring obligations payable out of the moneys raised by tax in said city, or any of the counties contained within its territorial limits, so to regulate such expenditures for any purpose or object, that the same shall not in any one year exceed the amount appropriated by the board of estimate and apportionment for such purpose or objects."

Section 1583 of the charter provides: " The salaries of all county officers in the counties of New York, Kings, Queens and Richmond shall unless otherwise provided by law be fixed by the board of aldermen on the recommendation of the board of estimate and apportionment, and all county charges and expenses and salaries of county officers in said counties and each of them shall be audited and paid by the department of finance out of the fund or appropriation applicable thereto, and the audit of said department in respect to such charges and expenses shall extend to the reasonableness thereof and shall be, in all respects, as full and complete as the audit of city charges and expenses provided for by section one hundred and forty-nine of this act."

There can be no question that both sections apply, at least to the extent of compelling the district attorney not to exceed his appropriation or the sum of any contingency appropriation or unexpended balance that may be added or applied to his appropriation under the law, or not to exceed the outlay of any sum that might be additionally appropriated by the board of estimate and apportionment beyond the sum fixed in the annual budget, as indicated in section 1542 of the charter, in the following provision of that section: " It shall be lawful, however, for the board of

estimate and apportionment in its discretion, and upon the certificate of the district attorney of any such county that the public interests demand for the proper conduct of a criminal action of exceptional difficulty that an additional appropriation be made for that purpose, to make such appropriation and to authorize the comptroller to issue special revenue bonds to provide the necessary means therefor," and to the extent of compelling him to submit a proposed annual budget as required by law for the purposes of enabling the city authorities to act in conformity with the provision of section 1583 of the charter.

In *People ex rel. Plancon* v. *Prendergast* (219 N. Y. 252) the court said, by CHASE, J. (p. 259): "It may be assumed for the purpose of this decision that the selection and appointment by the county clerk of his subordinates is an incident to his office of which he cannot be deprived, but it does not follow that he cannot be reasonably controlled therein so far as the number of his subordinates is concerned and in the amount to be expended therefor, the same as his power of selection can be reasonably controlled by the Civil Service Law." And in *Matter of Flaherty* v. *Craig* (226 N. Y. 76), where the Supreme Court had increased the salary of a court attendant, which had not been previously provided for by the board of estimate, the court said, by CRANE, J. (p. 79): "That the Supreme Court justices, under the Judiciary Law, had the right to fix the relator's salary without the acquiescence or approval, and beyond the control of the board of estimate or the board of aldermen, is not disputed. If the amount of increase had been included in the estimate for the year 1918, the board of estimate would have been required to include it in the budget for that year and the board of aldermen to adopt it. (*People ex rel. O'Loughlin* v. *Prendergast*, 219 N. Y. 377.)" The court, therefore, denied a mandamus to compel an audit of an increase of salary. And, see *People ex rel. Bacon* v. *Board of Supervisors* (105 N. Y. 180); *Lazinsk* v. *City of New York* (163 App. Div. 423); *Matter of Emerson* v. *Buck* (230 N. Y. 380).

The district attorney fully complied, it seems to me, with the charter requirements binding upon him. He, in due form, communicated with the director of the budget who issued his certificate informing the district attorney that the expenses of the salary were covered by the contingency appropriations previously made by the board of estimate and apportionment to cover similar expenditures. It likewise appears by the affidavit of the director of the budget in this case, that an additional appropriation was made by the board of estimate to cover the expenses of the special investigation which was being conducted by Mr. House for the

district attorney, presumably in conformity with, the special provision of section 1542 of the charter as above quoted. In my opinion, the board of estimate and apportionment has the power, under the law, to permit as it did in this case, disbursements or payments to be made for salaries or expenses out of the general funds appropriated for the purpose in any manner they may provide, and where available for the use of any department they become, when permitted by the board of estimate payable out of contingencies or the unexpended balances of the appropriation to the particular office, board, or department

In *Buck* v. *City of New York* (127 Misc. 354) where the board of estimate and apportionment authorized the employment of an expert whose payment had not been formally previously provided for in the budget, the court held that payment could be made from an unexpended balance. The comptroller of the city of New York contended that because such appropriation had not been specifically made for the particular appointee that under the provisions of section 56 of the charter, payment of the salary could not be enforced. The court said, PROSKAUER, J. (p. 355): "The construction contended for by counsel for the comptroller would make it impossible for any department of the city government to employ an expert for temporary service without action of the board of aldermen, and yet it is a matter of common knowledge that for years experts have been employed in litigation by the corporation counsel and for other services by other city departments and no question raised as to the payment of their just compensation when their employment was in good faith and properly charged against the unexpended balance of a duly made appropriation. This practical construction is likewise controlling. (*Grimmer* v. *Tenement House Dept.*, 205 N. Y. 549.) "

In *People ex rel. McLennan* v. *Grout* (38 Misc. 181) the court said: GREENBAUM, J. (p. 183): "It appears from the petition of the relator that the board of estimate and apportionment, did pursuant to the provisions of the Greater New York Charter (Sec. 226) in its last annual budget provide the sum of $30,000 for the expenditure by the district attorney of New York County ' as and for a contingent fund ' and that ' there remained an unexpended balance of the said funds so appropriated sufficient to permit the payment therefrom of the amount ' of the petitioner's claim.

" Section 1583 of the Greater New York Charter provides that ' all county charges and expenses and salaries of county officers in said counties and each of them shall be audited and paid by the department of finance out of the fund or appropriation applicable thereto, and the audit of said department in respect to such charges

and expenses *shall extend to the reasonableness thereof,*' etc. It is thus apparent that the functions of the comptroller with reference to the auditing the expenses of the district attorney, as county officer is limited to the passing upon the ' reasonableness ' of the expenditures."

The various steps taken by the district attorney and by the director of the budget and the board of estimate and apportionment after the appointment of Mr. House were merely routine and administrative. They had nothing to do with the status of Mr. House as an official appointee. It was merely an administrative process to see that he got his salary as fixed by the district attorney. The action of the State Civil Service Board merely certified that they approved his appointment in the sense that it was not necessary for him to have taken a civil service examination, to qualify. The civil service certificate had nothing to do with his status as an official. The communication of the district attorney asking for a formal alignment of Mr. House in the list of assistant district attorneys means nothing especially in view of the fact that the board of estimate, on the recommendation of the director of the budget determined that such step was not necessary to make him a regular employee. These facts are substantiated by the affidavit of the director of the budget above quoted at length.

As previously stated, I believe, all of the elements necessary to constitute Mr. House a regular employee of the district attorney were fully complied with in naming him as an attorney and counselor at law designated as a " special assistant district attorney " and constituted him an official assistant district attorney, regularly employed as provided by section 264 of the Code of Criminal Procedure.

If there were any irregularities that might technically operate to militate against an exact compliance with every detail necessary to have been followed, in the appointment of Mr. House which (I do not believe there were) he would at least be a *de facto* officer. The argument that there could be no *de facto* officer where there is no office could not apply here for the reason that the making of the official appointment by the district attorney, that is, going through the motions of naming him in an official manner — having him sworn in, and filing his certificate as required by law, created the office as such. It is the act of the district attorney that makes the office. There can be no doubt, under the circumstances, in my opinion, that his appointment as made would constitute him even if there were irregularities following his appointment, at least a *de facto* officer under the decisions. (*People* v. *Coco,* 70 Misc. 195; *People* v. *Lytle,* 7 App. Div. 553.)

In the *Lytle* case, where a special district attorney was appointed under a statute which had been repealed, the court held that, nevertheless, he was a *de facto* officer.

The motion to dismiss, quash or set aside the indictment is denied on the merits as to each of the defendants, and the pleas of " not guilty " as made by them are deemed to be reinstated.

Enter order accordingly.