WILLIAM MURRAIN, as Administrator of the Estate of MARTHA MURRAIN, Deceased, et al., Appellants-Respondents, *v.* WILSON LINE, INC., Respondent, and CITY OF NEW YORK, Appellant.

First Department, February 8, 1946.

*John F. X. Finn* of counsel (*Jerome Golenbock, Eugene J. Keefe, Irving Komoroff, Herman L. Feldman* and *Harry Kreindler* with him on the brief; *Golenbock & Komoroff*, attorneys), for appellants-respondents.

*W. Bernard Richland* of counsel (*Ignatius M. Wilkinson, Corporation Counsel*), for appellant.

*Walter L. Glenney* of counsel (*Glenney, Mathews & Hampton*, attorneys), for respondent.

PECK, J. Plaintiffs recovered judgment against the defendant city in consolidated death and personal injury actions arising out of a jam on the public pier at West 132d Street and the North River on August 17, 1941. The occasion was an excursion sponsored by a lodge which had chartered a steamboat for the day from defendant Wilson Line, Inc. The steamship company had received a permit from the city to make landings at the pier for the purpose of taking on and discharging passengers, paying therefor the regular wharfage charge of about ten dollars.

The pier is open to the public at all times but, for the purpose of regulating admission to boats, has a four-gate barrier at the river end. On the morning in question, lodge committeemen took complete charge of the gates and admission of passengers. There is a substantial variance in the estimates given by the several witnesses as to how many prospective passengers were on the pier that morning, but there is no showing that there were more than the number which had been accustomed to take

this excursion each year, upon which occasions no untoward incidents had occurred. The charter agreement limited the number of passengers to thirty-three hundred. It is clear, however, that the accident was not occasioned by overcrowding in relation to the capacity of the pier, but rather by a jam at the gates caused by a refusal of the lodge committeemen to open the gates and relieve the pressure after the circulation of a report that there were bogus tickets outstanding.

Two police officers were in attendance at the time the crowd started to gather, and two squads of five officers each were called in when the alarming condition became apparent. It is the contention of plaintiffs that the police officers did not act with the dispatch or in the manner required by the occasion to control the crowd and that the accident resulted from their failure to give proper attention and action to the situation.

In view of our disposition of this appeal, however, we do not deem it necessary to discuss the facts bearing upon the alleged negligence of the city; nor do we pass on the question of whether the evidence was sufficient to warrant submission to the jury.

The question with which we are confronted is whether there was any duty owed by the city to the individuals involved to provide protection against the condition which caused the accident.

The case is close to that fine line which can exist between a proprietary and a governmental function. The law is established that a municipality is answerable for the negligence of its agents in exercising a proprietary function, and at least for their negligence of commission in exercising a governmental function (*Bernardine* v. *City of New York*, 294 N. Y. 361; *Holmes* v. *County of Erie*, 266 App. Div. 220, affd. 291 N. Y. 798; *Miller* v. *City of New York*, 266 App. Div. 565, affd. 292 N. Y. 571), but a municipality is not liable for its failure to exercise a governmental function, such as to provide police or fire protection. (*Steitz* v. *City of Beacon*, 295 N. Y. 51; *Springfield Fire Ins. Co.* v. *Village of Keeseville*, 148 N. Y. 46; *Finkelstein* v. *City of New York*, 182 Misc. 271, affd. 269 App. Div. 662.) It can be said, therefore, that if the business on the pier on the occasion in question should be regarded as a business operation of the city, the city would be obliged to exercise the same care for the protection of passengers on the pier as a railroad would be required to exercise for the protection of passengers in a station. On the other hand, if the pier is to be analogized to a public highway, there would be no private duty of care or pro-

tection owed by the city to those upon the pier, but only that public duty of police protection which does not give rise to a cause of action. What, therefore, is the essential nature of the city's relation to the pier?

The city owned the pier and expected the public to come upon it and was under a duty to maintain the physical condition of the pier with a care at least equal to its duty of highway or sidewalk maintenance. The city was not, however, conducting any business on the pier or inviting use of the pier by the public. The city was not operating boats or excursions from the pier or regulating admissions to steamers. The city simply owned the pier, which is an extension of the street and which under the Administrative Code of the City of New York is termed and treated as a street (Code, § 361–1.0; see, also, *Radway* v. *Briggs*, 37 N. Y. 256, 258; *Taylor* v. *Atlantic Mutual Ins. Co.*, 37 N. Y. 275, 284; *Matter of N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248, 257), and charged a nominal license fee to steamship operators for their use of the pier. Their use or excursionists' use of the pier cannot be considered the city's use.

In a station or hotel or store where the owner is operating a business and inviting the public to gather for that business purpose, there may be some duty upon him to make such arrangements for the handling of crowds as is reasonably required by the circumstances. The predicate of care in such cases is that the patrons have gathered there in connection with the owner's business and have to some extent placed themselves under his charge, and the operation of the business reasonably calls for the surveillance and control of gatherings. We do not think that this kind of relationship existed between the passengers on the pier and the city on the occasion in question or that the nature of the city's ownership and control of a public pier includes the assumption of responsibility for the care of persons who come on the pier in connection with the business of a private steamship line, licensed to use the pier for embarking and disembarking passengers, or in connection with the business of the charterer of a vessel. The city did not in fact have charge of the gateway or admission of passengers to the boat and, therefore, did not in law have the responsibility of controlling the crowd there. The nominal license fee charged for use of the pier indicates no contemplation of management or supply of personnel by the city in connection with what is exclusively the business of the steamship company or charterer. It is akin to the license fee charged public conveyances using

the public streets, in connection with which the city assumes no care of the patrons using such facilities.

All that could be expected from the city under the circumstances was police protection of the same nature and degree as would be afforded to any public gathering at any public place. Such protection is the kind described by the Court of Appeals in the *Steitz* case (295 N. Y. 56, *supra*) in speaking of statutory provision for fire protection: " Such enactments do not import intention to protect the interests of any individual except as they secure to all members of the community the enjoyment of rights and privileges to which they are entitled only as members of the public. Neglect in the performance of such requirements creates no civil liability to individuals."

The waiver of sovereign immunity by section 8 of the Court of Claims Act (L. 1939, ch. 860) does not affect the matter. The waiver simply subjects the State and its subdivisions to the same liability as individuals or corporations for the same acts. It does not create liability on the part of a city for failure to exercise a governmental function.

The answer to the claim of liability here is two-fold: (1) An individual or corporation who owned a pier and had no more to do with the business thereon than the city had here, simply licensing its use by others, would not assume the responsibility of public protection in cónnection with their business. The city certainly has no greater responsibility than such individual or corporation would have. (2) The police protection afforded for the occasion here was in the nature of public policing of a public place and not in the nature of individual care of private patrons. The city's duty, therefore, was no greater than its public duty to provide police protection to crowds gathered in the streets or other public places. Of course, if in the line of service an individual policeman had committed some act of negligence whereby a citizen was injured, the city would be liable for that individual act. But no claim is made that the action of any policeman inflicted injury upon anyone here. The claim is that the police force failed to take the affirmative action which was necessary to avoid injury to members of the public, which is simply a failure of police protection. Such failure is not a basis of civil liability to individuals.

On the facts showing that the defendant Wilson Line, Inc., had merely chartered its vessel to the lodge for the day and had no connection with the excursion invitations or arrangements and no control over the operation of the gates or admis-

sion of passengers to the boat, the direction of a verdict for said defendant and the dismissal of the complaints against said defendant were proper.

The judgment so far as appealed from by the defendant City of New York should be reversed, with costs, and the complaints as to said defendant dismissed, with costs. The judgment so far as appealed from by the plaintiffs should be affirmed, with costs to the respondent Wilson Line, Inc., against the plaintiffs.

MARTIN, P. J., and CALLAHAN, J., concur; GLENNON and DORE, JJ., dissent in part and vote to affirm the judgment so far as appealed from.

Judgment so far as appealed from by the defendant City of New York reversed, with costs, and the complaints as to said defendant dismissed, with costs. (GLENNON and DORE, JJ., dissent and vote to affirm.) Judgment, so far as appealed from by the plaintiffs, unanimously affirmed, with costs to the respondent Wilson Line, Inc., against the plaintiffs.