MAX RITTER, Claimant, *v.* STATE OF NEW YORK, Defendant. (Motion No. 2350.)

Court of Claims, May 21, 1953.

*Emanuel Goodman* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Fred I. Zabriskie* of counsel), for defendant.

SYLVESTER, J. This motion for leave to file a claim against the State, pursuant to subdivision 5 of section 10 of the Court of Claims Act is opposed on the ground that the proposed claim fails to state a cause of action which contention, if sustained, requires a denial of the application (*Siegel* v. *State of New York,* 262 App. Div. 388; *Toyos* v. *State of New York,* 181 Misc. 761; *Young* v. *State of New York,* 190 Misc. 711). The proposed claim and affidavit allege that on June 2, 1949, claimant, a practicing dentist, was held up and robbed of various articles of property, including a diamond and sapphire ring, valued at $300; that after the marauder was apprehended, the stolen articles were recovered and turned over to the District Attorney's office in New York County for use in the prosecution proceedings; that in March, 1952, claimant was advised by an assistant district attorney in New York County that the case had been terminated and claimant's property, except for the ring, was thereupon returned to him, the assistant district attorney stating that '' he did not know what had become of the ring ''. When it was definitely resolved that it could not be found, claimant, at the suggestion of the assistant district attorney, wrote the comptroller of the city of New York in May, 1952, demanding the value of the ring. By letter of December 8, 1952, the comptroller's office wrote claimant dissallowing his demand. On March 20, 1953, the instant motion was made.

The application is opposed by the State, essentially on the ground that the District Attorney is a local, not a State officer; and that therefore the State incurs no responsibility for his acts.

In any event, it is urged that the District Attorney was acting in a purely governmental capacity, which, it is contended, immunizes the State against liability.

It has been uniformly held that the District Attorney is an officer of the State, " performing a state function and taking the place, in respect to his duties within the district or county, of the attorney general " (*Spielman Motor Co. v. Dodge*, 295 U. S. 89, 92–93, per Justice Hughes, quoted and followed in *People v. Fuller*, 156 Misc. 404, 427; see, also, *Dodge v. City of New York*, 252 App. Div. 631, 633; *Fellows v. Mayor of City of New York*, 8 Hun 484, 485; *People ex rel. Lyon v. Nicoll*, 32 N. Y. S. 279, 280; *People v. Tru-Sport Pub. Co.*, 160 Misc. 628, 638; Lincoln's Constitutional History of New York, Vol. II, pp. 529, 530; Vol. IV, pp. 722–723). While it is true that the duties of the District Attorney confine him to a particular locality, he is nevertheless a part of the judicial system of the State " performing within his county a distinctively state function " (*People v. Fuller, supra,* 428). It may be suggested, however, that these decisions are not necessarily decisive, since they present no issue as to the liability of the State for acts of the District Attorney. There is no doubt that for certain purposes, the District Attorney may be deemed a " local officer ". Under section 2 of the Public Officers Law, a State officer is defined, *inter alia,* to include every officer for whom all the electors of the State are entitled to vote and who is authorized to exercise his official functions throughout the entire State, whereas, the term " local officer " includes officers elected by the electors of a portion of the State who are limited in the execution of their official functions to a portion only of the State, language that would literally embrace the District Attorney. This statutory definition, however, was considered in *Spielman Motor Co. v. Dodge (supra)*, and held not determinative. In that case, the court said, at page 93: " In the Public Officers Law of 1892 (now Chapter 47 of the Consolidated Laws of New York, Article 1, § 2) a different classification was made and public officials were defined as either ' state officers ' or ' local officers,' the latter embracing officers chosen ' by the electors of a portion only of the State.' *District Attorneys fall within this description of local officers.* Notwithstanding the change in classification, they are still to be deemed a part of the judicial system of the State, each performing within his county a distinctively state function. Lincoln's Constitutional History of New York, *loc. cit.* See Opinions, Attorney General of New York, 1924, p. 120." (Italics added.)

That the District Attorney is an integral part of the judicial machinery of the State appears clearly from the history of the office (*Matter of Lewis* v. *Carter,* 220 N. Y. 8, 13).

In 1801, the office of District Attorney was created for the first time and provision was then made for the appointment of a District Attorney in each of seven districts into which the State was divided (L. 1801, ch. 146). The District Attorneys then appointed were vested with the duties formerly performed by the assistant attorneys-general of the State in each of these districts. Express provision was made for the participation by the Attorney-General under certain circumstances in the enforcement of the criminal law and the District Attorney for each district was required to aid the Attorney-General '' in such matters as appertain to his office, and shall be required of him by the attorney general ''. (*People* v. *Fuller, supra,* p. 422.) Thus, it is that the District Attorney performs within the county the functions formerly exercised by the Attorney-General. As was stated in *People* v. *Kramer,* (33 Misc. 209), at page 219: '' The district attorney, by statute and by a long-continued practice, has succeeded to some of the powers of the attorney general within the respective counties, but he has not supplanted him.''

It has been expressly held that the fact that the District Attorney's compensation is payable by the county or by the city, does not affect his status as a State officer. In *Fellows* v. *Mayor of City of New York* (8 Hun 485), the court said, at page 487: '' It is very clear that, by ' statute, the district attorney of the city and county of New York is not an officer of the county government, but a State officer ' and the fact that his compensation is payable out of the treasury of the county makes no difference with his legal status in that respect.'' Applicable legislation confirms this view. Subdivision 2 of section 926 of the County Law provides: '' 2. There shall continue to be appointed by the governor a district attorney in each of said counties, when a vacancy shall occur in such office ''.

Moreover, the power of removal is expressly vested in the Governor (N. Y. Const., art. 9, § 5) as is the power to supersede a local District Attorney in appropriate circumstances (Executive Law, § 63). Section 927 of the County Law provides that the District Attorney of New York County is to perform the duties prescribed in section 700 of the County Law, applicable to District Attorneys in the other counties of the State. These duties consist of the conduct of '' prosecu-

tions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed ''. The District Attorney '' represents the sovereign, in whose name all criminal process issue '' (3 Blackstone's Comm. 27; *People* v. *Fuller, supra,* p. 424). Thus, he acts for the State in the enforcement of the criminal law, constrained only by the jurisdiction and control of the Attorney-General and the Governor. Clothed with these attributes and confined by these limitations, the District Attorney must be regarded as a State officer.

It is true, as has been stated, that a public officer can be deemed a State officer for a given purpose and a local officer for another. The Surrogate, for example, is a member of the judicial system of the State and, as such, a State officer (*Matter of LaRocca* v. *Flynn,* 257 N. Y. 5, 14); nevertheless, it has been held that a Surrogate is a local officer for purposes of the statute requiring the filing of the oath of office (*Matter of Pardee,* 259 App. Div. 101, 104). Similarly, the County Clerk is a State officer in respect to his function as a clerk of the court, but a county officer in respect to his duties as County Clerk (*Olmsted* v. *Meahl,* 219 N. Y. 270, 276, 278).

In determining whether the office of the District Attorney is a State or local office for purposes of fixing the responsibility of the State or county for the torts of the District Attorney, consideration must be given to section 8 of the Court of Claims Act which defines the responsibility assumed by the State. By that section, the State '' assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations ''. And subdivision 2 of section 9 of the Act expressly confers upon the court jurisdiction of claims against the State '' for the torts of its officers or employees while acting as such officers or employees ''. Whatever limitations of liability may still inhere in the status of the State as a sovereign (*Newiadony* v. *State of New York,* 276 App. Div. 59), it is nevertheless the established policy that '' persons damaged by the torts of those acting as its officers and employees need not contribute their losses to the purposes of government.'' (*Sheehan* v. *North Country Community Hosp.,* 273 N. Y. 163, 166.) In essence, therefore, the doctrine of *respondeat superior* has been made applicable to the State by section 8 of the Court of Claims Act (Warren on Negligence, Vol. 2B, p. 216).

In the application of this principle, the circumstance that the expense of the office is borne by the city or county is not

decisive upon this issue. A principal may be held responsible for acts of his agent though the agent receives no compensation or is paid by another (*Nalli* v. *Peters,* 241 N. Y. 177, 179; *Callahan* v. *Munson S. S. Line,* 141 App. Div. 791, 795–796; *Koenitsky* v. *Matthews,* 64 Misc. 167, 169). And, as already pointed out, the authorities are clear that provision for the assessment of the expense of the office upon the county or municipality does not affect the status of the District Attorney as an officer of the State (*Fellows* v. *Mayor of City of New York, supra*). The test most generally applied in defining the responsibility of the master for the torts of his servant " is whether or not the alleged servant is engaged in the business of the one claimed to be master and is subject to the latter's direction and control." (Warren on Negligence, Vol. 2A, p. 507; *Horowitz* v *Daily Mirror,* 144 Misc. 99, 101, affd. 237 App. Div. 876; *Chapin-Owen Co.* v. *Yeoman,* 232 App. Div. 560, 562; *Ramsey* v. *New York Central R. R. Co.,* 269 N. Y. 219, 224; *Wyllie* v. *Palmer,* 137 N. Y. 248, 257; *Irwin* v. *Klein,* 271 N. Y. 477, 484-485.) Here, the property of claimant was delivered to the District Attorney for use as evidence in a criminal prosecution. Employed as he was in this case in the business of the State and acting under its general jurisdiction and supervision, it is concluded that he was the agent of the State for whose torts the State has assumed responsibility (Court of Claims Act, § 8).

There remains to be considered the question whether the State is liable for the negligence of a District Attorney acting in the performance of a governmental function. The authorities have repeatedly held the State responsible for an affirmative act of negligence of a public officer engaged in governmental activity (*Murrain* v. *Wilson Line,* 270 App. Div. 372, affd. 296 N. Y. 845, 995; *McCrink* v. *City of New York,* 296 N. Y. 99; *Foley* v. *State of New York,* 294 N. Y. 275; *Bernardine* v. *City of New York,* 294 N. Y. 361, 365).

The State or municipality has not been held liable for mere omission to exercise a governmental function, since the duty of government is owed to the community as a whole (*Steitz* v. *City of Beacon,* 295 N. Y. 51, 56). A failure to furnish adequate police protection (*Schuster* v. *City of New York,* N. Y. L. J. March 9, 1953, p. 776, col. 5) or fire preventive facilities (*Steitz* v. *City of Beacon, supra*) creates no civil liability to individuals (Restatement, Torts, § 288; *Steitz* v. *City of Beacon, supra; Moch Co.* v. *Rensselaer Water Co.,* 247 N. Y. 160). In such cases the immunity of the State rests, not merely on the cir-

cumstance that omission to perform a governmental function is involved, but is grounded upon the proposition that the State, in its omission to act, has not violated any duty owed the plaintiff as distinguished from its responsibility to the community at large (*Moch Co.* v. *Rensselaer Water Co., supra*; Restatement, Torts, § 288; *Palsgraf* v. *Long Island R. R. Co.,* 248 N. Y. 339, 345). Where, however, the city continues in its employ a patrolman known to be addicted to drink, from whose acts " danger to others may reasonably be anticipated " (*McCrink* v. *City of New York,* 296 N. Y. 105–106, *supra*); or where there is a failure to replace defective traffic lights resulting in injury to plaintiff (*Foley* v. *State of New York,* 294 N. Y. 275), the State or municipality is liable. It is believed that liability does not fully depend upon the mere distinction between misfeasance and nonfeasance in the performance of a governmental function (*Moch Co.* v. *Rensselaer Water Co., supra,* p. 168; but cf. *Murrain* v. *Wilson Line,* 270 App. Div. 372, affd. 296 N. Y. 845). In the *McCrink* case, the city " omitted " to discharge a drunken policeman. In the *Foley* case, the State " failed " to replace a defective traffic light. In both cases, the State or municipality was apparently held responsible for nonfeasance in the performance of a governmental function. Moreover, the principle cannot be completely stated in terms of the governmental nature of the act performed (see Desmond, J., dissenting, *Steitz* v. *City of Beacon, supra,* p. 58). Indeed, the State's freedom from liability has no relation to its status as a sovereign, but rests upon the doctrine that a putative wrongdoer, charged by contract or statute, with a particular duty, does not thereby become liable for negligent performance to everyone who might potentially be damaged thereby. As was stated in *Moch Co.* v. *Rensselaer Water Co.* (*supra*), at page 168: " We are satisfied that liability would be unduly and indeed indefinitely extended by this enlargement of the zone of duty. The dealer in coal who is to supply fuel for a shop must then answer to the customers if fuel is lacking. The manufacturer of goods, who enters upon the performance of his contract, must answer, in that view, not only to the buyer, but to those who to his knowledge are looking to the buyer for their own sources of supply. Every one making a promise having the quality of a contract will be under a duty to the promisee by virtue of the promise, but under another duty, apart from contract, to an indefinite number of potential beneficiaries when performance has begun. The assumption of one relation will mean the involuntary

assumption of a series of new relations, inescapably hooked together. Again we may say in the words of the Supreme Court of the United States, ' The law does not spread its protection so far' (*Robins Dry Dock & Repair Co.* v. *Flint, supra*; cf. *Byrd* v. *English,* 117 Ga. 191; *Dale* v. *Grant,* 34 N. J. L. 142; *Conn. Inc. Co.* v. *N. Y. & N. H. R. R. Co.,* 25 Conn. 265; *Anthony* v. *Slaid,* 11 Metc. 290).''

Mere failure of performance by the State, therefore, creates no liability. But where the State or any other claimed tortfeasor assumes to act in a particular case, it becomes subject to the duty of acting carefully. '' ' It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all' ''. (*Glanzer* v. *Shepard,* 233 N. Y. 236, 239, quoted in *Moch Co.* v. *Rensselaer Water Co., supra,* p. 167.) The test then appears to be '' whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good '' (Cardozo, J., *Moch Co.* v. *Rensselaer Water Co., supra,* p. 168). Failure to prevent fires or burglaries or to provide adequate police protection, being duties owed to the public at large, creates no liability. In these situations, the State has merely not been '' an instrument for good ''. Where a mounted policeman negligently runs down a pedestrian (*Bernardine* v. *City of New York, supra*); or a drunken policeman is sent forth upon the streets (*McCrink* v. *City of New York, supra*); or defective traffic lights are employed (*Foley* v. *State of New York, supra*), an '' instrument of harm '' has been launched and liability follows. And where, as here, the District Attorney has taken possession of the property of an individual member of the community and has failed to exercise reasonable care in its custody, there is more than a mere failure to perform a public duty. A responsibility owed to the individual claimant has been violated and for this act of negligence committed by an agent of the State, it would be required to respond. Proof of the facts alleged and the negligence charged will establish the liability of the State (Court of Claims Act, § 8). The motion for leave to file is therefore granted.