Irving H. Saypol, J.
I have before me for decision the motion of the defendant to dismiss the plaintiff’s case on the ground that the plaintiff has failed to make out a case adequate to give to the jury for its consideration.
Accepting the facts in the light most favorable to the plaintiff we take ourselves back to the night and early morning of August 2 and August 3, 1949, starting about 10:30 p.m., after the plaintiff had left his fiancée, in a tour of three barrooms in the borough of The Bronx. The plaintiff had parted from his fiancée at about 10:00 p.m. and then had gone to Jack’s Tavern to keep an appointment with a friend between 10:30 and 10:45 p.m. Evidently he remained there for about an hour and then went to a newsstand a block or two away at Simpson Street to buy the morning newspapers, that taking a half hour.
From that point he went to another bar and grill a short distance away, known as the Paradise Bar, where about 1:00 a.m. he overheard a conversation at the bar about two counterfeit five-dollar bills in the presence of two strangers. One of the- strangers, afterwards identified only as “Duke” and represented by the other stranger as a Federal agent, first asked to read the sporting columns -in the plaintiff’s newspaper. *81 Thereupon the other stranger identified himself to the plaintiff as a police officer of the City of New York, exhibiting what may be inferred to be a detective shield, and to corroborate his representation that he was a police officer invited the plaintiff to feel under his coat for his weapon, a pistol, which the plaintiff says he did.
There is no testimony in the case about the nature or the purpose of the kind of law enforcement that Bijou, who it turned out, was the detective, engaged in, but the plaintiff says that Bijou told him he wanted to question him. It may be said at this point that, from that point, on all the events of the night, except for asking to look at the plaintiff’s newspaper, Mr. Duke, whoever he was, never said another word throughout the night either about law enforcement or any other subject, except, perhaps, in connection with the ordering of drinks.
In any event, Mr. Bijou, having identified himself to the plaintiff, from that point on the plaintiff says he was in enforced custody of both of these characters throughout the night for the next three hours, until 4 o ’clock in the morning.
They left almost immediately, entering what the plaintiff says was Bijou’s automobile, the plaintiff seated between Bijou driving and Mr. Duke on his right side, and they proceeded again a short distance to the last of the places of refreshment, described as the Tabu. In the course of the trip the only conversation was from Mr. Bijou who evidently was concerned about getting some girls or seeing some girls, but quite clearly from the plaintiff not in connection with the enforcement of the law, but perhaps for other purposes which need not be fathomed.
They arrived at the Tabu and entered the place. There were other patrons there. The activities for three hours were confined to plenty of drinking, in fact, for Mr. Bijou two at a time, for Mr. Duke one at a time, of hard liquor, and one or perhaps two bottles of beer for the plaintiff. During those three hours, at Mr. Bijou’s instigation, on one or perhaps two occasions, the plaintiff addressed himself to the bartender and to the manager in regard to Bijou’s quest for girls and when they were not forthcoming Mr. Bijou, it is said, went off on a tirade and went out on the sidewalk and created quite a commotion, including a description, unsavory to say the least, of the nature of the premises the Tabu was, and Mr. Duke went out to repress him.
But in any event in that state of affairs by 4 o’clock in the morning Mr. Bijou was out again for the second time on the *82 sidewalk, together with the plaintiff and Mr. Duke, and from that point on Mr. Duke fades out of the picture. The proprietor or the manager closed the premises at closing time to everybody, including these participants, and the net result of the whole escapade is that the plaintiff found himself grievously injured, crippled by a gunshot wound from Mr. Bijou’s pistol.
In that posture of events plaintiff comes into court suing the City of New York as Mr. Bijou’s employer, claiming that Mr. Bijou negligently discharged his duty as a police officer, that the master is liable for the acts of the servant when in the course of the master’s employment, and he seeks to be compensated by the City of New York for his damage.
The law on this subject in recent years has been fairly well expressed and its development is summarized in Warren on Negligence (Vol. 2B, par. 4, p. 22) starting with McCarthy v. City of Saratoga Springs (269 App. Div. 469 [1945], motion for leave to appeal denied 269 App. Div. 912 on the authority of Bernardine v. City of New York, 294 N. Y. 361). It has been judicially accepted that the sovereign, meaning the State or the city, has agreed to waive its immunity from liability for the acts of its employees while engaged in governmental functions. This should be distinguished from injury in the discharge of a governmental function by the State or municipality itself. (See Murrain v. Wilson Line, 270 App. Div. 372, affd. without opinion 296 N. Y. 845, motion for reargument denied 296 N. Y. 995.) Although it was said, obiter dictum, at page 377 in the Murrain opinion (supra), and I emphasize, if in the line of service an individual policeman had committed some act of negligence whereby a citizen was injured, the city would be liable for the individual act.
Cases in which the question has arisen are such as Goldman v. City of New York (278 App. Div. 770 [2d Dept.]) where a citizen entered a liquor store wherein there were on duty a policeman and a sergeant, concededly so, and in some by-play Goldman was injured. There was a recovery.
In Ferguson v. City of New York, again concededly a policeman while on duty without warrant and notice, shot Ferguson’s intestate and the. Court of Appeals (303 N. Y. 936) unanimously affirmed, without opinion the Appellate Division holding, sustaining a recovery (279 App. Div. 606).
Brown v. City of New York (279 App. Div. 741) was an action for a false arrest and assault against the City of New York and two policemen, who although off duty, while riding in an automobile, gave testimony to the effect that they had heard *83 screams and saw a running woman at 4:00 a.m. in the morning while on the way to work, which impelled them to take action as police officers, and in apprehending and questioning Brown it was charged and held that a jury verdict was tenable to show that the police officers acted negligently and that the City of New York was liable. Again there was a volume of proof adequate to create an issue of fact as to whether or not the police officers were acting in the line of service, as Presiding Justice Peck said in the obiter referred to in Murrain v. Wilson Line (supra). Plaintiff pleaded the case on the theory that the defendant was negligent either in retaining in its employ with knowledge of his prior aberrations and infirmities (see McCrink v. City of New York, 296 N. Y. 99) and secondly, that the employee was negligent in the performance of his duties, within the scope of his employment.
The plaintiff here abandoned the first theory at the trial, conceding that he had no proof available and intended to present none that the City of New York had notice. In fact, plaintiff was silent in that regard in his opening to the jury.
The proof on the second theory, in its entirety, depends upon remote inferences based entirely on the plaintiff’s narrative.
The plaintiff concedes that the crucial question is whether or not Bijou was discharging police duties in the course of the night and as the result of which Mr. Pacheco was shot.
The plaintiff, at the close, conceded that Bijou was off duty, not assigned at the time; but the plaintiff relies on Police Department Rules and Regulations, No. 175, which has been noticed without objection, the pertinent part of which, in effect, provides that a member of the police force, like Bijou, is always subject to call for duty. Quite clearly, and there can be no dispute, in the presence of violation of law it is a policeman’s duty to take steps to suppress the offense and to apprehend the offender.
There is no basis here on the plaintiff’s own testimony to suggest other than that what happened here was the offensive violation of law by an off-duty member of the police force, himself, who was not engaged in the performance of duty, but rather was on a drunken spree, looking for entertainment of a questionable kind.
The idea of plaintiff accompanying him for over three hours in the early morning in the company of the unidentified Duke, who never said a word throughout, certainly nothing about law violations, by the plaintiff or anyone else, in the presence of many other people in places of public assembly, amid whiskey *84 drinking — two at a time for Mr. Bijou — with conversations in the automobile, once about getting girls and twice in the Tabu, bespoken through the plaintiff in Spanish, once to a manager and another time to a bartender, makes it incredible in law to suggest that Mr.- Bijou was engaged in the performance of duties for the defendant, the City of New York, and makes it insufficient in law to establish by the required standard, id est, the preponderance of evidence supplied by the plaintiff raising a question of fact to be decided by the jury as to whether or not Mr. Bijou was engaged in the performance of his duties as a police officer.
That being so, the defendant’s motion to dismiss is granted.