Daniel Levy, Doing Business as Bay Shore Feed Co., Plaintiff, *v.* Louise Salerno et al., Defendants.

Supreme Court, Trial Term, Suffolk County, January 7, 1955.

*Morris A. Feuerstein* for plaintiff.

*Nathan Zausmer* and *Jack Korshin* for defendants.

COLDEN, J. This is an action brought pursuant to section 170 of the Decedent Estate Law by a creditor of a decedent against the legatees named in his will to recover to the extent of the assets paid to them for the debt of the decedent.

The decedent, Eugene Salerno, had a running account with the plaintiff for many years for goods sold and delivered. At the time of his death decedent owed the plaintiff $6,513.74. Part of this debt was evidenced by two notes, one for $1,700 executed on October 2. 1944, and the other for $3,600 executed on March 20, 1946.

On December 15, 1945, the decedent made a will in which, among other things, he bequeathed twenty-four shares of stock of the One Oak Dairy Inc. to his wife, the defendant Louise Salerno, and twenty-seven shares of said stock and a diamond ring to his daughter, the defendant Fisher. One week later, on December 22, 1945, the decedent transferred the stock to his wife and daughter in the identical amounts mentioned in the will. On January 14, 1946, he gave the diamond ring to his daughter.

The defendant died on March 24, 1946, and his said will was admitted to probate in the Surrogate's Court, Nassau County. His estate was insolvent. After his assets had been liquidated and the administration expenses paid, the balance was divided among his creditors, the plaintiff receiving his prorata share. Obviously no legacies were paid as such.

Plaintiff contends, however, that the defendants received payment of their legacies by way of advancements and that the value thereof exceeds $16,000. Plaintiff argues that the transfer of the stock and the diamond ring prior to the decedent's death must necessarily be advancements of the legacies because they followed exactly the pattern or scheme of disposition provided for in the will. If this argument were valid, it would mean that no one who had executed a will could ever anticipate his will by gift. Such a result would lead to grave injustice.

In the instant case the decedent died shortly after making his will and transferring the property. But what of the many cases where a testator lives for years after executing his will? In most instances recipients of *inter vivos* gifts from him would be unaware of the terms of his will. Even if they were acquainted with the terms thereof, such *inter vivos* gifts would, to a large extent, be rendered nugatory if the donee could be required years later to account for the value thereof if the donor should at the time of his death prove to be insolvent.

If a donor is insolvent when he makes a gift or renders himself insolvent by making the gift, the creditor can set the gift aside (Debtor and Creditor Law, § 270 *et seq.*). If the donor is not then insolvent, the creditor can proceed against him directly at that time. To permit a creditor to wait several years and then sue donees of *inter vivos* gifts made when the donor was solvent would hamper the free transfer of property, impede its use after it had been given and generally lead to chaos so far as the law of gifts is concerned.

The three cases cited by plaintiff in support of his contention are readily distinguishable. In *Matter of Moran* (53 Misc. 169, 170–171), the testator made a will in which he bequeathed to various legatees certain percentages in his business known as " ' Moran's Towing Line.' " He directed that the business be continued after his death. The will contained no residuary clause. Shortly after executing the will the testator formed a corporation to which he transferred the business described in his will as " ' Moran's Towing Line.' " Instead of taking all of the stock in his own name he directed the secretary of the corporation to issue various amounts to the persons named in his will as legatees. The question presented was whether the legatees should receive the testator's stock in the corporation or whether there had been an ademption of the legacies and the testator deemed to have died intestate as to said stock. It was held that the will should be construed so as to avoid intestacy, that the legatees should receive the stock remaining in the testator's name and that " in considering the proportionate interest of the various legatees, the amount of stock which has been heretofore issued to them in the formation of such company shall be deemed as an advancement on their share."

In *Matter of Frank* (195 Misc. 406), the testatrix provided in her will that all devises and bequests should be paid free from estate taxes which were to be paid out of her residuary estate. Prior to her death she transferred certain property specifically mentioned in the will to the beneficiary therein named. The

question was whether the tax on such transfer should be paid by the estate. The court pointed out that ordinarily a direction to pay estate taxes does not include taxes resulting from *inter vivos* transfers made separately and apart from the will. But in this case the court held that the transfer was not an independent transaction but so tied to the will that the testator's intention to pay estate taxes must be deemed to have included this transfer as well.

In *Langdon* v. *Astor's Executors* (16 N. Y. 9), it was held that a testator may provide that advancements to legatees named in his will, if charged on his books of account, should be deemed so much on account of the provision in his will in favor of such person.

In all of the cases cited by the plaintiff the question involved was the intent of the testator. That a gift may constitute an advancement of a legacy if that be the intent of the testator is well settled. But to say that every gift is necessarily an advancement because it conforms to the plan of disposition determined by a testator does not follow at all. The testator may, if he wishes, change his mind and dispose of his property during his lifetime. For tax purposes such gifts, if made shortly before his death, would be presumptively taxable. But they would not for that reason constitute legacies within the meaning and intent of section 170 of the Decedent Estate Law so as to render the recipients thereof liable as legatees for the debts of the decedent.

If the decedent herein was insolvent when he transferred the stock and diamond ring to the defendants, or was rendered insolvent by the transfer, plaintiff is not without remedy (Debtor and Creditor Law, § 270 *et seq.*).

In *Siegel* v. *Cohen* (23 Misc. 365, 366), plaintiff failed to show that there had been any distribution of assets of the estate of the deceased debtor. In affirming a dismissal of the complaint the Appellate Term said: " At most, all that can be inferred from the testimony is that the respondent, without any legal sanction, has appropriated the entire assets of the estate to her own use. This, however, does not bring the case within the section referred to, nor entitle the appellant to a recovery under the form of action to which he has resorted." (See, also, *Fink* v. *Berg,* 50 Hun 211, and *Ehnes* v. *Nolan,* 204 Misc. 102, affd. 283 App. Div. 868.)

Plaintiff's argument that the law of the case has been established because two motions to dismiss the complaint for legal insufficiency were denied and appeals from the orders thereon

were never prosecuted is beside the point. On those motions the court was required to assume the truth of the facts alleged in the complaint, including the allegation that the transfers of the stock and of the ring " were made to these defendants as advancements of the legacies " provided for them in the will. On this trial, however, that allegation had to be proved and plaintiff offered no proof thereof except his inference derived from the similarity between the gifts and the provisions of the will. For the reasons stated above, no such inference should be drawn. There being no other proof that the gifts were advancements, plaintiff failed to sustain this allegation.

It follows that judgment must be granted in favor of the defendants dismissing the complaint on the merits. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.

Proceed on notice.