John H. Cooke, J.
On the 13th day of September, 1959, at about 10:50 p.m., claimant, while operating his motor vehicle in a southerly direction on Route 77, a two-lane, 18-foot-wide State highway, collided with an abandoned truck. The accident occurred in the Town of Pembroke, Genesee County, between Indian Falls and the intersection of Route 77 with Route 5. The weather was clear, the pavement dry and the highway unlighted.
Witnesses testified that the truck encountered mechanical difficulties at or about 3:00 p.m., in the afternoon. It remained on the highway until the time of the accident and occupied the greater portion of the west side of the highway, forcing southbound traffic to avail themselves of the easterly portion of the highway for passage.
When the State Police received notice of the situation at 9:20 p.m., they dispatched a troop car, driven by Trooper Domzalski, to the scene. Trooper Domzalski proceeded to the scene arriving at about 9:40 p.m.
Trooper Domzalski testified he found the abandoned truck, unlighted, did not attempt to turn on the lights, made no effort for the removal of the abandoned vehicle, but attempted only to ascertain the identity of the driver or owner of the truck.
Claimant seeks recovery against the State of New York, alleging negligence and nuisance in permitting an abandoned vehicle to obstruct a State highway, causing severe permanent personal injuries and property damage.
The claim, timely filed, has not been assigned or submitted to any other tribunal for audit or determination.
The State raises two questions to be determined: (1) whether the State Police have a duty to remove artificial obstructions from State highways or to provide warning of their presence, *933 and (2) whether, for the passive nonperformance thereof, a cause of action arises in favor of an individual member of the public.
Although the State has waived immunity from liability (Court of Claims Act, § 8), the State contends that the duties of State Police are statutory and limited as defined in section 223 of the Executive Law. It is further emphasized that by statute definition the State Police are not obligated in respect to physical maintenance of State highways.
It cannot be argued that State Police are not empowered to enforce statutory laws created by the Legislature and to attempt to apprehend violators. Chapter 698 of the Laws of 1957 and later chapter 148 of the Laws of 1960, now section 1204 (subd. [b]) of the Vehicle and Traffic Law, provides: “ Whenever any police officer * * * finds a vehicle unattended where it constitutes an obstruction to traffic * * * such officer is hereby authorized to provide for the removal ’ ’.
The Joint Legislative Committee on Motor Vehicle Problems stated, in part, as to the 1957 enactment (N. T. Legis. Doc., 1954, No. 36, p. 102): “ The two conditions precedent for standing or parking on a roadway ‘ in every event ’ as was noted above, are that there be room for other cars to pass and that the parked vehicle will be visible to approaching traffic in time for an approaching driver to be able to avoid colliding with the parked vehicle. Obviously if the first of these conditions is not met, a serious impediment to the flow of traffic will exist and if the second is not met a serious hazard is created. Subsection (a) confers necessary authority on police officers to remove, or to require to be removed, the vehicle obstructing traffic or creating a hazard.”
Trooper Domzalski, observing the location of the abandoned, unlighted vehicle, certainly, was empowered to remove the same or arrange for its removal.
Although it has been apparently established that the performance of police activities is an exercise of a governmental function of the State (Murrain v. Wilson Line, 270 App. Div. 372, affd. 296 N. Y. 845, 955), the instant case need not be distinguished, since that case, by its decision, distinguishes itself. In Murrain v. Wilson Line (270 App. Div. 372, 377, supra) the New York City-owned pier charged a nominal license fee to steamship operators for their use of the pier, but did not have charge of the gateway or admission of passengers to boats. The city’s ownership of the pier did not include assumption of responsibility for care of persons on the pier in connection with the business of a private steamship company, and the city was *934 responsible only for the same protection afforded to any public gathering. The court stated:
“ The waiver simply subjects the State and its subdivisions to the same liability as individuals or corporations for the same acts. It does not create liability on the part of a city for failure to exercise a governmental function.
‘ ‘ The answer to the claim of liability here is two-fold: (1) An individual or corporation who owned a pier and had no more to do with the business thereon than the city had here, simply licensing its use by others, would not assume the responsibility of public protection in connection with their business. The city certainly has no greater responsibility than such individual or corporation would have. (2) The police protection afforded for the occasion here was in the nature of public policing of a public place and not in the nature of individual care of private patrons. The city’s duty, therefore, was no greater than its public duty to provide police protection to crowds gathered in the streets or other public places. Of course, if in the line of service an individual policeman had committed some act of negligence lohereby a citizen was injured, the city would be liable for that individual act.” (Emphasis added.)
In Green v. State of New York (251 App. Div. 108 [1937]) the court, in discussing the waiver of immunity, stated as follows: ‘ ‘ It has been said that the purpose of the statute last quoted was 1 to declare that in the conduct of trials held subsequent to September 1, 1929, the State assumes liability, if the evidence warrants a finding of negligence by its officers or employees, and that subsequent to September 1, 1929, the Court of Claims shall possess jurisdiction to determine the facts and the law in accordance with the same rules as apply to actions in the Supreme Court against individuals. ’ ”
In Jackson v. State of New York (261 N. Y. 134,138) the court stated that the statute (Court of Claims Act, § 8) transforms an unenforcible moral obligation into an actionable legal right and applies to the State the rule respondeat superior.”
In Bernardine v. City of New York (294 N. Y. 361, 365 [1945]) the court said: 1 ‘ On the waiver by the State of its own sovereign dispensation, that extension naturally was at an end and thus we were brought all the way round to a point where the civil divisions of the State are answerable equally with individuals and private corporations for wrongs of officers and employees,— even if no separate statute sanctions that enlarged liability in a given instance. (Holmes v. County of Erie, 291 N. Y. 798.) ”
In Mentillo v. City of Auburn (2 Misc 2d 818, 820) the defendant municipality was held answerable in negligence for the acts *935 of its employee in negligently exercising a governmental function, and the court stated: ‘ ‘ The law is clear that a municipality is answerable in negligence for the acts of its agents and employees in negligently exercising a governmental function. (Murrain v. Wilson Line [270 App. Div. 372], supra; Bernardina v. City of New York, 294 N. Y. 361; Holmes v. County of Erie, 266 App. Div. 220, affd. 291 N. Y. 798.) Even if there was no liability on the part of the defendants to furnish police protection to the public, when said defendants undertook to act and took D ’Agnesi into custody, they assumed the duty of acting carefully. (Ritter v. State of New York, 204 Misc. 300, 307, revd. on another ground 283 App. Div. 833.) Thus, the failure on the part of a city to maintain a traffic officer at an intersection would not impose liability upon it; nevertheless, where such a traffic officer is furnished and he acts negligently, liability arises. (Joy v. City of Jamestown, 207 Misc. 873.) ”
The duty of a police officer was also discussed in Joy v. City of Jamestown (207 Misc. 873), wherein the court discussed various cases previously quoted in this decision. The court, however, did say (p. 875) : “ In the instant case, if the city had failed to maintain a traffic officer at the intersection, that would be merely an omission to perform its public duty for which it would not be liable but here, the city not only undertook to direct traffic but its agent, the police officer, went so far, it is alleged, as to order, divert and authorize the bus to proceed across the crosswalk where the plaintiff was walking. Such conduct impresses me as an affirmative act rather than a negative act. ’ ’
There seems to be no question that the law established by the preceding cases imposes a liability on a municipality or the State where a governmental function was negligently performed.
In the instant case, the defendant has questioned whether the State should be held liable for a passive nonperformance of a duty if a duty existed. In the instant case, the discovering of the hazardous situation and the possibility of an impending danger to users of the highway imposes a duty on the trooper to undertake precautionary measures to prevent an impending tragedy. His failure to act could well be called a passive nonperformance of duty, but might also be deemed a direct omission to act, giving rise to the situation which is the proximate cause of the accident.
On the theory of passive nonperformance, in Matter of Synesael v. State of New York (21 Misc 2d 234, 236) the court stated: “It has been held that an allegation of failure to act after inspection, if violation was discovered, may state a
*936 cause of action, raise an issue of fact and entitled a claimant to offer his proofs. (Metildi v. State of New York, 177 Misc. 179.) ”
Therefore, the court feels that discovering a dangerous hazardous condition under the circumstances and permitting the condition to continue was the proximate cause of the accident and the resulting personal injuries to the claimant. The court feels that the defendant, the State of New York, is liable for the action or the failure to act by the State trooper to take precautionary measures to prevent the mishap.
As a result of the injuries sustained by the claimant, claimant was confined to various hospitals for a total period of 400 days, and sustained severe deep surgical shock, concussion of the brain with intracerebral damage, complete transverse traumatic myelitis of his spinal cord at the level of the fifth and sixth cervical vertebrae, cutting the spinal cord, suffering complete permanent sensory and motor paralysis of his legs and body, and partial permanent sensory and motor paralysis of his arms and hands, complete motor paralysis of his chest, so that breathing is accomplished by the use of a diaphragm, paralysis from his neck to and including his feet, ¡torn, shredded laceration of left ear and broken left teeth and extensive lacerations. He sustained quadriplegia which is permanent and there is no real return of the motor or sensory functions. He further lost the use of his bladder and bowel control, with kidney damage, and he is, at present, a total invalid requiring constant hospital care and medical care, and, in accordance with medical testimony, will never recover. Due to claimant’s permanent injuries and loss of the use of his limbs, claimant will require constant care and attention of a paid employee for the duration of his life.
Further and as a result of the accident, claimant’s motor vehicle was completely demolished.
The court, therefore, awards the sum of $228,000 for property damage and personal injuries sustained by the claimant.
The court finds that the accident and resulting injuries were caused solely and wholly by the negligence of the State of New York, and that the claimant did not contribute thereto.
The findings of fact and conclusions of law filed by the parties hereto have been marked and signed and they constitute a part of the decision.