OPINION OF THE COURT
Thomas J. Lowery, Jr., J.
These claims arose out of an accident that occurred at approximately 11:15 a.m. on May 12, 1981, when a car driven by Joseph G. Coco skidded out of control after encountering an oil slick on State Route 48 in the Town of Van Burén, Onondaga County, New York.
*654 The oil slick, which covered both lanes as well as the shoulders of State Route 48, began at a point opposite the Seneca Knolls Shopping Plaza and extended for a distance of one-half mile to the south. Its origin is unknown. Although a manager of a local service station observed that motorists were having difficulty traversing the roadway earlier that day, the State first became aware of the condition shortly after 10:30 a.m. when a State trooper attempted to turn into the plaza parking lot and his patrol car skidded some four to five feet. Thereafter, at approximately 10:50 a.m., an unidentified person notified the Department of Transportation and a sand truck was immediately dispatched to the scene. Unfortunately, it did not arrive until after the accident.
Joseph G. Coco, accompanied by his wife and two children, left his home shortly before 11:00 a.m. that day. He stopped briefly at Cooper Ford in Baldwinsville, some five miles north of the accident scene. He then proceeded south on State Route 48 toward Syracuse. It had just begun to rain and he turned on his windshield wipers. Approximately 1,500 feet south of the plaza, he observed a slow moving car ahead and decided to pass. The highway at that point was straight and level and the speed limit was 40 miles per hour. He accelerated to a speed of 38 miles per hour and pulled into the northbound lane. Before he could pass, his car skidded on the oil covered pavement, causing him to lose control. Although he applied his brakes, it was to no avail and his car careened off the highway into a utility pole. It is now alleged that the accident and the resulting injuries were caused by the State’s negligence in failing to remedy or warn of the oil slick.
It is well settled that the State is required to use reasonable care in maintaining its highways (Highway Law, § 12; Lopes v Rostad, 45 NY2d 617) and liability will attach where its officers have actual or constructive notice of a dangerous or potentially dangerous condition (Harris v Village of East Hills, 41 NY2d 446) and then fail to take reasonable means to warn of or correct that condition. (Rinaldi v State of New York, 49 AD2d 361.)
There is little doubt that the oil slick constituted a hazardous condition (see Gamjian v State of New York, 281 *655 App Div 923; Kirchner v State of New York, 223 App Div 543) and that the State had actual notice of its presence. The anonymous telephone call to the Department of Transportation at 10:50 a.m. provided such notice. In addition, the trooper, whose duties included being on the lookout for traffic hazards and reporting the same, became aware of the slick at 10:30 a.m. (See Cohen v City of New York, 204 NY 424; Farley v Mayor of City of N. Y., 152 NY 222.) Despite the State’s actual notice, however, it cannot be said that State forces, other than the trooper, had a reasonable time thereafter to respond.
With respect to the trooper, no liability may be imposed on the State unless it is determined that he breached some duty that was owing to the Cocos. (Pulka v Edelman, 40 NY2d 781.) This will necessarily depend on the nature of the activities that he was engaged in at the time of his alleged negligent conduct. If he was merely providing police protection, no liability will be found. In such cases, the duty is owed to the public generally and, absent legislation determining that the scope of public responsibility should be enlarged so as to create a general duty of protection in the laws of tort based upon specific hazards or perceived dangers, the courts have consistently refused to cast the State in damages where a particular member of the public has been injured under circumstances that might have been prevented by police intervention. (Menter v Bilz, 92 AD2d 1015.) To hold the State liable under such circumstances, the proof must demonstrate the existence of a special relationship out of which is born a special duty. (Napolitano v County of Suffolk, 61 NY2d 863; De Long v County of Erie, 60 NY2d 296; Dutton v City of Olean, 60 AD2d 335, affd 47 NY2d 756; Zibbon v Town of Cheektowaga, 51 AD2d 448, app dsmd 39 NY2d 1056.)
To be distinguished from those activities of the trooper that relate to the providing of police protection are those that are undertaken in furtherance of the State’s proprietary duty to maintain the safety of its highways. (See Riss v City of New York, 22 NY2d 579.) In such cases, the duty is owed to all highway users and the trooper’s conduct will be judged by ordinary tort principles, i.e., reasonable care under the circumstances. (See Rindfleisch v State of New York, 27 NY2d 762; Rohweller v State of New York, 90 *656 AD2d 650; Ritter v State of New York, 74 Misc 2d 80; Peterson v State of New York, 37 Misc 2d 931, affd 19 AD2d 860, mot for lv to app den 13 NY2d 599.) The rationale for the distinction is that where the trooper is acting in furtherance of the State’s proprietary duty, he has control over the force causing the injury, to wit, the highway, whereas with police protection, he is guarding against an external hazard over which he has no control and the extent of the protection afforded necessarily depends on the availability and allocation of police resources.
The trooper testified that he was on patrol duty when he first encountered the oil slick. He stated that he conducted an investigation and determined that the highway was slippery in places and presented a temporary traffic hazard. He testified further that he considered various options that were available to him, any of which he admitted would have provided adequate warning of the hazard to approaching motorists, but decided that the only precautionary measure required was to have his headquarters advise the Department of Transportation of the condition. Finally, he testified that he radioed his dispatcher and then continued his patrol duties elsewhere.
It is apparent from the testimony of the trooper that this is not a police protection case, since the trooper did not undertake to protect the Cocos against some external hazard over which he had no control. (See, e.g., Napolitano v County of Suffolk, 61 NY2d 863, supra [runaway horse in area of highway]; Pinkney v City of New York, 40 NY2d 1004 [oncoming vehicle striking motorist whose car had stalled on highway]; Evers v Westerberg, 32 NY2d 684 [intoxicated driver, who had previously been released by the police following an accident, later being involved in a second accident].) Rather, he was acting in furtherance of the State’s proprietary duty to safely maintain its highway.
The trooper’s testimony was a maze of contradictions and was disputed in material respects by the testimony of the service station manager as well as by documentary evidence introduced at trial. With respect to the latter, the record fails to support a finding that the trooper’s alleged *657 call to headquarters was ever made. Although the dispatcher’s log recorded a call at 11:10 a.m., the radio log failed to disclose any notation that such a call had been received and the Department of Transportation had subsequently been notified. Further, the log produced by the Department of Transportation contained only a notation that an unidentified person had called at 10:50 a.m. In addition, the making of the call is refuted by the trooper’s own testimony. He stated that he arrived on the scene at 11:00 a.m. and spent five minutes at a local diner, 10 minutes monitoring traffic, and some time thereafter driving up and down the road, all before he made the call. Obviously, if such testimony is credited, he could not have made the call at 11:10 a.m.
In any event, even assuming that the call was made, more was required under the circumstances. The call was a recognition by the trooper that the oil slick posed a danger to motorists and that the condition had to be rectified. This danger was confirmed by his own experience and by statements made to him by the service station manager and another motorist that vehicles were encountering difficulty in traversing the highway. Yet, despite the fact that he had sufficient means at his disposal, no warning was given pending the arrival of the sand truck. Instead, he left the scene. Hence, it is found that the trooper failed to fake reasonable precautions in view of the impending danger.
In addition, the State’s suggestion that the trooper’s conduct should be judged in light of the circumstances existing as of the time of his investigation rather than the time of the accident, when rainfall had worsened the danger, must be rejected. The increased danger caused by the rain should have been anticipated in the exercise of reasonable care. (See Gamjian v State of New York, 281 App Div 923, supra; Sporborg v State of New York, 226 App Div 113.)
In accordance with the foregoing, the court finds that the trooper was negligent, and that such negligence was a substantial factor in bringing about the happening of the accident and the resultant injuries (see Koester v State of New York, 90 AD2d 357, app withdrawn 58 NY2d 972) for *658 which the State will be held liable. (Court of Claims Act, § 10; McCrossen v State of New York, 277 App Div 1160, mot for lv to app den 302 NY 950.)
Finally, the State’s defense that any damages hereinafter awarded should be diminished by the proportion that the culpable conduct of the claimants bears to the culpable conduct attributable to it (see CPLR 1411, 1412) is rejected. In this regard, the State has failed to meet its burden of proof.